In the Matter of the Application of JOHN P. FITZGERALD, Petitioner, for an Order Directing the Reviewing of a Determination of the STATE DIVISION OF THE DEPARTMENT OF PUBLIC SERVICE OF THE STATE OF NEW YORK and/or the PUBLIC SERVICE COMMISSION, Respondents, in the Four Several Proceedings, Respectively, Entitled as follows:

In the Matter of the Petition of JOHN LeCLAIRE, etc., Case No. 6826 (2nd District), and

In the Matter of the Petition of DeVENE VROOMAN, etc., Case No. 7816 (2nd District), and

In the Matter of the Petition of WILLIAM CRAWFORD, etc., Case No. 1861, and

In the Matter of the Petition of COLONIAL MOTOR COACH CORPORATION, etc., Case No. 2753.

Third Department, July 2, 1941.

*A. Raymond Cornwall*, for the petitioner.

*Gay H. Brown, Counsel to Public Service Commission [Laurence J. Olmsted of counsel]*, for the respondents.

HEFFERNAN, J. This is a proceeding under article 78 of the Civil Practice Act to review a determination of the Public Service Commission denying a joint petition of Central Greyhound Lines, Inc., hereinafter referred to as Greyhound, and John P. Fitzgerald to approve a lease of four certificates of convenience and necessity from Greyhound to Fitzgerald.

In December, 1925, and March, 1926, Greyhound's predecessor in title acquired, with the approval of the Public Service Commission, together with a number of others not involved here, the four certificates of convenience and necessity which relate to bus operations from Watertown to Gouverneur; Gouverneur to Canton; Canton to Malone; Malone to Plattsburg. The certificates acquired by Greyhound were obtained from individual operators who drove their own buses in operating to and from the places covered by the certificates.

From 1925 until January, 1937, Greyhound operated two heavy buses, one seating twenty-nine and the other thirty-three passengers, over the routes embraced in the certificates.

At the hearing before the Commission Greyhound's comptroller testified, and the testimony is not disputed, that the amount of travel through the territory did not justify the continued operation of the large type of buses that were being used by his company. He said the operating cost over the line was twenty-four cents per mile while the revenue was but fourteen and forty-nine one-hundredths cents per mile, but with lighter equipment, such as Fitzgerald planned to use, it would be possible to maintain the line at a profit to the operator.

Greyhound devised a plan whereby it was proposed to lease a number of its certificates to certain of its bus operators, who resided on the routes involved. Accordingly it entered into agreements with four drivers to operate between Watertown and Sacketts Harbor, between Watertown and Cape Vincent, between Watertown and Carthage, between Watertown and Clayton and Alexandria Bay. The Commission, in proceedings instituted for that purpose, gave its approval to each of these agreements.

On July 25, 1936, following the precedents thus established by the Commission, Greyhound entered into an identical agreement with petitioner Fitzgerald, one of its drivers, to operate over the route covered by the four certificates involved in the proceeding before us. That agreement provided, among other things, that

Fitzgerald was to receive all the revenue and pay all operating costs and that if the net revenue was not sufficient Greyhound was to assume the deficiency. The contract also provided that Fitzgerald should render to the traveling public the same service provided by Greyhound, at rates of fare approved by the Public Service Commission, and that if he failed to do so, Greyhound should have the right to cancel the agreement.

After the making of this agreement an application was made to the Commission for its approval. A public hearing followed at which hearing precisely the same testimony was given as in the four preceding cases. Fitzgerald did not appear personally nor was he represented by counsel. Greyhound appeared by an attorney.

Greyhound's comptroller testified at this hearing that if Fitzgerald failed to operate the buses his company would definitely agree to do so.

No one registered a protest against the transfer of the certificates and at the conclusion of the proof the Hearing Commissioner wrote a memorandum in which he recommended the approval of the lease as being in the public interests. In his memorandum the Commissioner said: " The order, however, should contain a condition that our approval may at any time be abrogated if it appears that the lessor is failing to provide a reasonable and adequate transportation service."

Certainly it is difficult to imagine how the public interest could be better served. Notwithstanding the four precedents already established and despite the recommendation of the Hearing Commissioner and the safeguard suggested by him, the Commission, by a vote of three to two, denied the application in the following memorandum written by its Chairman: " No. The Commission once approved the transfer of these certificates from individual and personal operators to the Greyhound Company, on the ground that it was in the public interest to have these certificates operated by a large and strong company. The company now asks to lease these certificates to an individual operator on the ground that the individual operator could operate small buses much more fitted to local conditions than the large buses of the Greyhound. The Greyhound is said to be a large and strong company; it can operate those buses just as well, if not better than the individual operator, and I see nothing in the public interest which would justify the lease to these individual operators and thus reverse what has already been done."

After the announcement of the decision Fitzgerald applied for a rehearing. This petition was referred by the Commission, not to

one of its members, but to a hearing examiner. At the rehearing Fitzgerald testified that, relying on the Commission's decision in the preceding cases, he incurred obligations of more than $10,000 in preparation for the operation of the route. He also testified while operating under the arrangement with Greyhound he did so at a profit. He showed that he was a competent operator with all necessary equipment and that while Greyhound conducted an unprofitable operation he had conducted a profitable one.

Notwithstanding favorable and uncontradicted evidence the hearing examiner reported that the order disapproving the lease should be affirmed, and subsequently the Commission made such an order with the same division in the vote of its members.

The examiner's report is illuminating. He disregarded the Chairman's reason for disapproving the lease and adopted a new theory. In substance he said that although the local authorities had consented to the lease they had done no more than grant permissive authority, and that there was no evidence that they preferred to have Fitzgerald operate the route rather than Greyhound. He also said that there was no evidence to show that conditions had changed since Greyhound acquired the certificates and that the other four cases were not precedents.

Without analyzing the report in detail suffice it to say that it is made up entirely of inaccuracies, conclusions and new matter which Fitzgerald had no opportunity to meet or explain.

Fitzgerald petitioned for a rehearing to demonstrate that the examiner's report was erroneous and to show that leading citizens in the municipalities affected desired the approval of the lease and also that conditions had changed since Greyhound acquired the consents.

The order of the Commission affirming the previous order was made on June 22, 1938, and served on July 5, 1938. The petition for a second rehearing was filed on July 28, 1938, within thirty days from the date of service of the order of affirmance. The Public Service Law (§ 22) provides that application for a rehearing must be made within thirty days *after the service* of such order.

The petition for the second rehearing was rejected on the ground that it was not filed within the time required by law and upon the further ground that the testimony which it was desired to offer was immaterial.

This proceeding was then instituted.

We do not agree with the Commission's interpretation of section 22 of the Public Service Law that but a single rehearing is contemplated by the statute. That question, however, is not of decisive importance here.

In the proceeding before us we are faced with two decisions to the same effect, one based upon the memorandum of the chairman of the Commission and the other upon that of one of its examiner's reports. While both conclude that the lease should not be approved in the public interest, each assigns different reasons for the conclusions. The chairman's memorandum is quoted and we have discussed the report in sufficient detail to disclose its contents. Neither memorandum nor report furnishes either reason or logic to sustain the determination of the Commission.

In the Commission's brief it is asserted that it is without jurisdiction to approve the lease because the parties thereto by their acts put it into effect without the Commission's approval. That argument is refuted by the proof. The lease for which approval is sought provides for approval by the Commission and distinctly states that performance thereunder may not be commenced until such approval is secured. The lease itself, in so many words, states that it shall not be effective until approved by the Commission. During the trial period Fitzgerald was to operate the line not as lessee or agent but as an employee of Greyhound.

The record contains ample evidence of all the essential facts for approval of the lease. There is no proof whatever to justify disapproval. It is not questioned that Fitzgerald can serve the public better under existing conditions than could Greyhound.

The finding of the Commission disapproving the lease is without evidence to sustain it. The action of the Commission clearly is arbitrary and capricious. It approved leases in four identical cases and then on the same proof denied Fitzgerald like relief for no reason whatever. The reason assigned by the chairman of the Board for withholding approval of the lease on the ground that such approval would reverse a ruling made many years ago is frivolous.

The determination should be annulled, with fifty dollars costs and disbursements, and the matter remitted to the Commission.

CRAPSER, BLISS and SCHENCK, JJ., concur; HILL, P. J., dissents.

Determination annulled, with fifty dollars costs and disbursements, and the matter remitted to the Commission.