In the Matter of the Claim of LEO DRESHER et al., Appellants. ISADOR LUBIN, as Industrial Commissioner, Respondent.

Third Department, November 16, 1955.

*Dorothy Friedman* for appellants.

*Jacob K. Javits, Attorney-General (Francis R. Curran* and *James O. Moore, Jr.,* of counsel), for respondent.

BERGAN, J. In a series of decisions this court has consistently sustained claim to unemployment insurance benefits even though previously accrued rights to vacation payments under labor contracts might coexist at the same time. Those cases, however, all followed upon findings of the Unemployment Insurance Appeal Board in favor of the claimants; here the findings are the other way.

Our problem is at once different and more delicate when such findings adverse to the claimants are before us; since we do not review the facts, and must affirm if there is a support of substantial evidence to underpin what the board has done with the facts.

In reviewing this case, therefore, we lay the decision alongside the statute and examine in what areas the decision moves in a field of law, and what areas in a field of fact. We are not, of course, bound by the board's view of the law in the sense we are bound by its view of the facts; our function, rather, is to interpret the law as far as we go.

Claimants are in the pocketbook industry and their claims on the point in controversy seem to be representative of a large number of workers (some 12,000) in the industry whose labor is governed by the vacation terms of the written collective bargaining contract now before us.

The agreement provides that all workers shall be entitled, not to vacations, but to "vacation allowances". The agreement contains further directions about when the "vacation pay" shall be due. It is to be noticed that the agreement does not deal in the conventional sense with vacations as such; or with time off from work. Even a clause dealing with the right of employees to work and also receive vacation benefits says nothing about vacation as such. It provides, merely, that the workers may work and receive their vacation "allowances" in addition to their regular pay.

This freedom to accept additional benefits from the contract is stated to be a "part of the wage structure" in addition to regular wages for working. It is not easily to be treated as quite the same thing as being paid for not working, if not working is the result of a layoff or closing of the plant temporarily or for any cause not of the worker's own choice.

In the two typical cases submitted to us which are stipulated to be representative of all the others on this appeal, one claimant was laid off by the employer June 28, 1954, because the employer had no material to be worked on and was preparing

for a new season; the other claimant was laid off July 2, 1954, for lack of work. Neither group of employees worked during the first week in July. One of the two claimants whose case is stipulated to be typical of one group testified that she was told on the closing day when she was laid off that she would be notified to come back when there was work and she was not notified to return until the morning of July 12th, the actual date of reopening. Although this is not contradicted in the record, the board made the general finding that " All employees at the time they were laid off were told to return to work on July 12 ".

As to both, representing as they do the cases of the other appellants, the period of layoff from work by the respective employers included the whole period of the first week in July. It is " during " this week that the labor agreement requires that the first portion of the " vacation pay * * * shall be paid ". No vacation allowance was in fact paid during the first week in July by the employers and it is conceded that claimants were not given the vacation allowances required by the contract until August; and while this alone is not controlling on the nature of the payments made in pursuance of the contract, it seems to suggest they were deemed in the nature of contractual payments due for past services and not tied very closely to the exact first week in July " during " which they were agreed to be " paid ".

Claims for unemployment insurance benefits insofar as they are to be attributed to that part of the layoff period in which they were entitled to receive " vacation pay " have been disallowed by the Unemployment Insurance Appeal Board, reversing the decision of the referee, who heard the cases and allowed the claims.

The statute (Unemployment Insurance Law, § 522 [Labor Law, art. 18]) defines total unemployment as the " total lack of any employment " which occurs " on any day ". Benefits are measured by a system of computing effective days which are defined (§ 523) as any full day of total unemployment except that no effective day occurs in a week in which the claimant has employment for which he is paid a statutory basic remuneration.

" Remuneration " itself is defined as " every form of compensation for employment " including bonuses (§ 517). The problem then, is not whether the vacation " allowances " paid in August, 1954, but due to be " paid during " the first week of July under a contract based on " One week for one year's serv-

ice in the industry " are a bonus, but whether they must be treated as remuneration for employment occurring in the first week of July, 1954.

It is " remuneration " for " employment " in the week which bars the accrual of effective days in that week (§ 523) and not what it is called by name. The payment of money due that week for prior services rendered or for other accrued contractual rights would not come within the words of the statute. The other condition of the statute, i.e., the existence of total unemployment is not in dispute during the week at issue.

The findings of the appeal board as we read them are not a decision on the facts in the sense they resolve one way or another either what was agreed to be done or what was actually done by the parties; but rather an evaluation of the underlying question of law. There is, indeed, no dispute by anyone about what was done or agreed to be done; and the Industrial Commissioner's brief states " The facts are not in dispute ". The claimants all were not working during the first week in July as a result of being laid off and all were recalled for work on July 12th; and, of course, the text of the labor agreement itself is not in dispute.

In a series of decisions which can be distinguished from the case before us only with great difficulty, the Unemployment Insurance Appeal Board, and this court by affirming the board's decisions, have laid down a rule about vacation allowances provided under labor contracts which points in a direction different from that of the decision in the case before us. Both the appeal board and this court, by approving the board's view of the law, have laid down rules which ought not be abandoned unless it can be demonstrated rather explicitly that the legal policy was wrong and ought to be superseded.

The board has, of course, the utmost freedom in which way disputed facts are to be decided and need not necessarily be consistent; nor do we have the power to impose consistency. The board probably also has somewhat greater freedom than a common-law court might have in its views on law and legal policy; but we are bound by *stare decisis* where decision involves a question of law and when a legal principle stems from the cases that have been decided we are under a need to follow it. The risk of imposition of some measure of legal consistency by the court upon administrative agencies is part of the tariff that must be paid for whatever advantage can be claimed for review by a law court of the work of an administrator.

The findings of fact made by the appeal board here merely recount the events which have been described. The difference

between the board and the referee was on the law and on an interpretation of decisions of the court. The legal judgment of the board essentially turned on the question whether there had been a " termination " of the employer-employee relationship; and since the claimants had returned to work on July 12th the board was of opinion that the relationship had not terminated.

But under this statute the test is not some generalization by which it may be determined whether a man is in an employee relationship to the employer. The statutory question, as we have seen, is whether he is paid " for " certain days " of employment " (§ 523).

It seems manifest that claimants here were not paid " for " the days of " employment " in the first week in July. Under the contract they were given an allowance to be paid during that week, but the right to which was measured by previous accruals while working either for the employer, or in " the industry " while working for other employers, all occurring before the week of July 1st.

They had the right to work and still get the allowance based on prior services; it is difficult to maintain logically if they were deprived of this right by being laid off that nevertheless the right to payment thus accrued is to be treated as payment " for " these specific days " of employment ".

If the case were closer than it seems to be on fresh analysis, we would feel ourselves bound to sustain the right to unemployment insurance benefits on the authority of *Matter of Spinella (Corsi)* (282 App. Div. 974). There the agreement provided for a two-week vacation period during the first two weeks in July. Before the period began (June 6th) the claimants were laid off for lack of work. They were told they would be advised by mail when the plant would reopen; they were later thus advised that it would reopen August 4th and went back to work then. The appeal board had no difficulty in holding there that this vacation period was in payment for previous services and that claimants were entitled to benefits for this period; nor did we have any trouble in reaching an affirmance.

The Attorney-General argues that this decision is distinguishable from the case before us because there " the employer-employee relationship did not continue during the layoff period ". A distinction is not readily apparent on that ground; on the other hand we feel there should be reasonable consistency in the legal policy to be followed; and if that case and this one are to be treated consistently, they must be treated alike. As

to one group of claimants here, at least, the uncontradicted testimony makes this case and *Matter of Spinella (Corsi)* fully identical; and as to the other group it is strongly analogous in principle.

The board's opinion distinguished *Matter of Levy (Todd Shipyards Corp.—Corsi)* (279 App. Div. 947) from the case now here on the ground that employment there was "intermittent and sporadic, terminating at the end of each day" while here the "relationship" did not terminate. But in the *Levy* case (pp. 947–948) the contract between the employer and the bargaining agency was specific on the point that the "employees do not lose the employee status and their rights as such providing they present themselves for employment once every twelve working days". The work was irregular because of its unpredictable nature; but the status of employment continued and the board found (p. 948) that the "vacation money" was a bonus for the last year's work.

We are unable to distinguish that case and this on the theory of any important difference in the employer-employee relationship. The difference is one of detail. The decisions in *Matter of Yeager (Corsi)* (282 App. Div. 604); and *Matter of Marshall (Corsi)* (282 App. Div. 531) decided here at the same time that the *Spinella* case was announced both point consistently to the same general principle; and, indeed, the cases were supposed by us to test a general policy of the board in different aspects at the same term of the court. We affirmed the board there as a matter of law and we think the case here is to be decided the same way and that the claims should be reconsidered by the board on the legal questions presented.

The decision of the Unemployment Insurance Appeal Board should be reversed and the claims remitted to the board for its further consideration, with costs to appellants against the board.

Foster, P. J., Coon, Halpern and Zeller, JJ., concur.

Decision of the Unemployment Insurance Appeal Board reversed, and the claims remitted to the board for its further consideration, with costs to appellants against the board.