In the Matter of the Claim of EUGENE R. SITTNIEWSKI et al., Respondents. TWIN COACH COMPANY, Appellant; ISADOR LUBIN, as Industrial Commissioner, Respondent.

Third Department, December 2, 1958.

*Edward D. Flaherty (John R. Davison* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General,* for Industrial Commissioner, respondent.

*Lipsitz & Green (Richard Lipsitz* and *David S. Reisman* of counsel), for claimants-respondents.

*Dudley, Stone & Sawyer (Horace C. Winch* and *James S. McAskill* of counsel), for Buffalo Chamber of Commerce, *amicus curiæ.*

*Mahlon Z. Eubank* for Commerce and Industry Association of New York, Inc., *amicus curiæ.*

GIBSON, J.  An employer appeals from a decision of the Unemployment Insurance Appeal Board sustaining the rights of claimants-respondents to benefits by reason of their alleged unemployment for certain days in 1956, claimed by the employer to have constituted a period of vacation.* The employer appeals, also, from an order denying its application to the board to reopen.

The collective bargaining agreement between claimants' union and the employer provided that any hourly employee who had been continuously employed immediately preceding June 30 for one of the periods specified in a table set up in the agree-

---

* The controversy antedates the enactment of the present subdivision 3, entitled " Vacation period ", of section 591 of the Labor Law.  (L. 1958, ch. 387, § 13.)

ment should "be entitled to a vacation with pay at straight time" for the number of days specified in such table, the minimum being 2 days for an employee of six months' standing and the maximum being 10 days for one employed 36 months or more. The agreement further provided that vacations would, "so far as possible", be granted in accordance with the desires of the employees, but "the final right to allot vacation periods [was] reserved to the Employer" and the employer might, in fact, shorten or eliminate vacations entirely, in which event each employee would "receive vacation pay at straight time for any period to which he is entitled, as vacation as set forth above." It was also provided that employees leaving the employment under the various circumstances stipulated in the agreement or laid off for indefinite periods would "receive payment equal to their accumulated vacation pay".

In years previous to 1956, vacations had been staggered. In 1956, however, the employer announced one general vacation period, the announcement being prefaced with these words: "Because of changes in our production schedules and the necessity of coordinating new contracts with our old ones, it seems advisable to close our plants and offices for a vacation period this year." None of the 1,033 hourly employees worked during the period, except 111 who engaged in maintenance and tooling operations and 8 who worked on an urgent order.

The board determined that claimants were unemployed during the period in issue, holding that the so-called vacation payments were "for prior services rendered and represented an accrued contractual right" and "were not remuneration for employment for the period". The determination is expressly based upon our decision in *Matter of Dresher* (*Lubin*) (286 App. Div. 591).

The collective bargaining agreement in the *Dresher* case provided, not for vacations, but for "vacation allowances", based on length of service, specifically as "part of the wage structure"; and stipulated that employees might work and receive their vacation allowances in addition to their regular pay. Discussing claimants' rights under the latter clause, we said (p. 595): "They had the right to work and still get the allowance based on prior services; it is difficult to maintain logically if they were deprived of this right by being laid off that nevertheless the right to payment thus accrued is to be treated as payment 'for' these specific days 'of employment'." In the case before us, the board seems to have given exclusive weight to what was said in *Dresher* (p. 594) as to the effect, in the light of the facts of that case, of the payment of money "for prior services

rendered or for other accrued contractual rights ", overlooking the basic consideration upon which and from which the *Dresher* decision proceeded, which was the conceded fact that there the typical claimants were laid off for lack of work. So too, in the cases cited in *Dresher* as parallel thereto, the employees were laid off for lack of work. (See *Matter of Marshall* [*Corsi*], 282 App. Div. 531; *Matter of Yeager* [*Corsi*], 282 App. Div. 604; *Matter of Spinella* [*Corsi*], 282 App. Div. 974.) It should be noted, also, that in *Matter of Levy* (*Todd Shipyards Corp.- Corsi*) (279 App. Div. 947, affd. 304 N. Y. 823), which we found undistinguishable from *Dresher,* the work was " irregular and uncertain " and we defined the sole issue as " whether the unemployment of the claimants during the so-called vacation periods was due to a genuine rest period or whether it was due to the continuance of a period of insufficient work during that time."[*]

In this case, there was no finding with respect to the critical issue as to the existence of sufficient work, although there was some testimony bearing on that question. Instead, the determination proceeded largely, if not entirely, upon the board's construction of the contract. The contractual provisions before us, standing alone and without satisfactory proof as to the reasons for, and the facts and circumstances of the partial shutdown, do not compel the legal conclusion that no bona fide vacation could occur. It would be paradoxical indeed if contractual provision for the accrual of vacation rights and vacation pay should be considered, in and of itself and as a matter of law, to negate the very possibility of a true vacation. Neither does it necessarily follow, from the record as thus far developed in this case, that a vacation otherwise bona fide as respects employees, would become something else if some advantage to the employer's production should coincide, as the notice of vacation may indicate to have been the case.

---

[*] In a statement of policy adopted by the Industrial Commissioner in 1955 upon the recommendation of the Unemployment Insurance Advisory Council, and said to be interpretive of the decisional law, it was said: " It is important to note that in most cases where workers receive paid vacations, the vacation period is a temporary respite from work which is immediately preceded and immediately followed by full employment, and no question of any layoff is involved. In all of these cases, the worker is not eligible for benefits even if he should seek to obtain them, and the actual experience of the Division over the years is that practically none of the workers in such cases ever come to the local unemployment insurance offices to claim benefits. On the other hand, the court decisions have established the principle that if the so-called vacation period occurs within a period of economic layoff for lack of work, it is not a genuine vacation and benefits should be paid." (See 1955 Annual Report of Industrial Commissioner, Appendix C-1, p. 165.)

Since, in our view of the case, a new hearing is necessary, the appeal from the order denying the employer's application to reopen becomes academic. Respondents have not challenged the propriety of that appeal.

The decision of the Unemployment Insurance Appeal Board should be reversed and the claims remitted to the board for further proceedings not inconsistent herewith, without costs. The appeal from the order denying the employer's application to reopen should be dismissed, without costs.

FOSTER, P. J., BERGAN, COON and HERLIHY, JJ., concur.

Decision of the Unemployment Insurance Appeal Board reversed and the claims remitted to the board for further proceedings not inconsistent with the opinion herein, without costs.

Appeal from the order denying the employer's application to reopen dismissed, without costs.