Jasen, J. (dissenting).
I would reverse the order of the Appellate Division and reinstate the determination of the Board of Standards and Appeals. Viewing the record as a whole, I believe that the board’s determination is supported by substantial evidence and is not otherwise arbitrary or capricious. Further, I do not believe that Lefrak’s privilege under the building permit matured into a vested right to complete construction of the projected high-rise apartment complex. Indeed, I question the applicability of the traditional vested rights doctrine to this case. Finally, assuming, as the majority at the Appellate Division seems to have done, that cases such as this may be resolved by balancing the equities (see 2 Rathkopf, Law of Zoning and Planning, ch. 57, § 12, and 1971 Cum. Supp.; Matter of Humble Oil & Refining Co. v. Worthington, 49 Misc 2d 432; Tremarco Corp. v. Garsio, 32 N. J. 448; but see Matter of Smith v. Spiegel & Sons [Sup. Ct., Kings Co.], N. Y. L. J., Jan. 5, 1968, p. 19, col. 1, revd. 31 A D 2d 819), I take a different view of where the equities lie.
In December, 1960, the City of New York adopted a comprehensive amendment to its 1916 zoning resolution, prohibiting, among other things, construction of high-rise apartment developments in the Forest Hills-Kew Gardens area of Queens. The new resolution did not go into effect until a year later, on December 15, 1961. The purpose of the one-year delay or “ grace period ’ ’ was to avoid the disruption of building plans previously undertaken without knowledge of the projected comprehensive *798 amendment. In other words, developers were permitted to file building plans for approval under the old zoning law until the latter date—December 15, 1961.
By virtue of an amendment adopted in 1963 (1960 Zoning Resolution, § 11-322)[1], a two-year extension of the building permit could be secured in the event that construction was begun but not completed by December 15, 1963, provided that substantial construction of foundations had been completed. By further amendment[2] (1960 Zoning Resolution, § 11-324), enacted in *799 1964, the board was empowered to grant additional one-year extensions of building permits, “ in appropriate cases ” if “ on or before the date of the expiration of the term of the preceding extension, substantial construction of foundations has been completed
The property in question consists of two contiguous parcels, located immediately north and south of the Union Turnpike on the right-of-way of the Long Island Bail Boad, in the Forest Hills-Kew Gardens area of Queens. In March, 1961, during the afore-mentioned grace period, the Long Island Bail Boad sold the property to Adson Industries, Inc. The contract authorized erection of buildings and related facilities at street level over the railroad bed, with the right to install columns and foundations in the railroad bed itself, the railroad reserving a perpetual easement for its purposes. In 1961, before expiration of the grace period, Adson filed its building plans and applied for construction permits for two 18-story apartment buildings conforming to the old zoning law. The plans were approved and the construction permits were issued in July, 1963. In the meantime, Adson had assigned its rights under the contract to two wholly-owned subsidiaries, Park Lane Plaza North, Inc., and Park Lane Plaza South, Inc.
In December, 1963, Adson’s permit expired and it applied for an extension. In March of the following year, the board granted a two-year extension, i.e., through December, 1965, under the applicable provisions of the 1963 amendment (§ 11-322), finding that the project was a “ major development ” and that substantial construction of foundations of at least one of the build *800 ings had occurred. In December, 1965, Adson applied for a further extension, which was granted, pursuant to section 11-324 (subd. [a]). Another one-year extension was sought in December, 1966, and was also granted. In 1967, Adson defaulted on an $800,000 mortgage on the subject property. Franklin National Bank, the mortgagee, purchased the property at a foreclosure sale and subsequently sought and obtained three successive one-year extensions of the building permits in 1967, 1968 and 1969.
In December, 1970, Franklin sought a further extension until December 15,1971, representing that it would make every effort to secure a builder to complete the construction in 1971. The board granted the extension in January, 1971. In April of that year, Franklin contracted to sell the property to Lefrak. The contract price was $200,000 •—$10,000 in cash and a $190,000 purchase-money mortgage. Title passed in November, 1971. Between contract and closing, Lefrak entered into possession and worked on site preparation. Lefrak also modified the original building plans in several respects, including foundations, to provide for two 20-story towers. In August, 1971, the building permits were amended accordingly by the Queens Borough Superintendent.[3]
In December, 1971, Lefrak applied for an additional one-year extension of the building permits. After two hearings, marked by high public interest, the board denied the application finding (1) that Lefrak did not have a possessory interest in the property in question as of June 15,1963, or during prior extensions; (2) that Lefrak had not established substantial construction of foundations prior to December 15, 1971, the cut-off date for consideration on an application for extension; and (3) that this was not an appropriate case for exercising its discretion to grant an extension.
The Appellate Division, by a divided court, annulled the determination and directed that Lefrak’s applications be granted. The majority was of the view that the reciprocal actions of the board in granting past extensions and of Lefrak and the predecessor owners of the property in making improvements and incurring obligations in reliance on the permits, gave rise to vested rights and equitable considerations which could not be abrogated.
*801 Preliminarily, I would note agreement with the majority and the dissenters at the Appellate Division who rejected the board’s first asserted ground for denying an extension—-that Lefrak lacks a possessory interest. Contrary to the board’s holding, nothing in the 1960 Zoning Resolution requires a possessory interest as of June 15, 1963. (See 1960 Zoning Resolution, §§ 11-322, 11-323, 11-324.) Nor does it prohibit the assignment of building permits — a restraint which might run afoul of constitutional guarantees. (Cf. Matter of Weinrib v. Weisler, 33 A D 2d 923, affd. 27 N Y 2d 592.)
There is ample support in the record, however, for the board’s determination that substantial construction of foundations was not completed by December 15, 1971. As I read the statutory scheme, that date, the terminal date of the preceding extension, is the cut-off for determining whether the requirement of substantial construction of foundations has been met, and, thus, whether an additional extension may be granted. (§ 11-324, subd. [a].) Thus, all construction expenses, occurring after December 15, 1971, where at Lefrak’s risk and need not have entered into the board’s deliberations on the application for an extension.
The proof submitted on the issue of substantial construction of foundations (up to December 15,1971) was highly conflicting. Lefrak contended that approximately 837-863 cubic yards of concrete had been installed. Its concrete delivery tickets, however, showed substantially less. And, as the board noted, at best, 863 cubic yards of concrete represents only 13% of the concrete in the foundations. On the other hand, intervenors’ expert found only about 4% of the foundations constructed as of December 15, 1971. On this record, I think the board was amply justified in determining that the requisite physical evidence of a substantial commitment to build—i.e., substantial construction of foundations—-was lacking.[4]
The Board also found that this was not an £ £ appropriate case to exercise its discretion to grant an additional extension of time to permit the completion of construction”. (Emphasis supplied.) The board contends that ‘ ‘ appropriateness ” is an independent, additional statutory criterion for granting extensions under section 11-324 of the 1960 Zoning Resolution. On the *802 other hand, Lefrak argues that “ appropriateness ” refers only to subdivisions (a) and (b) of section 11-324—i.e., an appropriate case is one in which substantial construction of foundations has been completed (§ 11-324, subd. [a]) or one which involves a statutorily recognized hardship (§ 11-324, subd. [b]; see, also, § 11-323).
I am inclined to agree that the appropriateness criterion affords the board an additional measure of discretion in granting permit extensions.[5] I find it unnecessary, however, to characterize the appropriateness criterion under section 11-324, as I believe the board’s finding of no substantial construction of foundations is supported by substantial evidence and is sufficient to uphold the denial of a permit extension.[6]
The question remains, nevertheless, whether prior extensions granted by the board on similar or even less proof render the instant denial arbitrary and capricious. I think not.
In all, under section 11-324, the board granted six permit extensions to Lefrak’s predecessors, finding in- each case that substantial construction of foundations had been completed. In each of the previous applications, substantially less construction costs and related expenditures were claimed. While continuous and uniform policy is to be desired, it must be remembered that the rule of stare decisis is not fully applicable in the administrative process and courts lack the power to impose consistency save where an error of law is involved. (Matter of Dresher [Lubin], 286 App. Div. 591, 594; 1 N. Y. Jur., Administrative Law, § 142; 2 Am. Jur. 2d, Administrative Law, §§ 470, 478; Ann., Administrative Law—Stare Decisis, 79 ALE, 2d 1126; but see Matter of Fitzgerald v. State Div. Dept, of Public Serv., 262 App. Div. 393, 397.) Thus, an administrative agency is not bound to perpetuate past errors. On the contrary, it has the power and the duty to correct an erroneous interpretation of *803 the governing statute or even an unwise policy. (Matter of Punnett v. Evans, 26 A D 2d 396, 398.) Similarly, a past deviation by an administrator should not bind future administrative action which represents a rational view of the applicable statutory provision. (Matter of B’rith Abraham v. Thacher, 43 Misc 2d 129, 130.)
Applying these guidelines to the instant case, I do not believe the board’s determination to be arbitrary or capricious. The prior extensions were granted after rather pro forma hearings and were premised on a finding of substantial construction of foundations. It is now obvious that these determinations were erroneous and, in my view, the board ought not be bound to follow them under any concept of stare decisis. Furthermore, Lefrak modified the building plans, including foundation design, and allegedly virtually abandoned whatever construction or site preparation work had been done in the past—all the more reason for allowing the board to make a fresh appraisal of compliance with the statutory standard, unfettered by its past ill-considered and erroneous determinations. It should also be borne in mind that 10 years had then elapsed since the effective date of the new zoning resolution and that on the previous application for an extension Franklin had represented that the building would be substantially completed during 1971. In view of this representation, the board’s refusal to mark that extension “ terminal ” is of no significance. Certainly, these factors must enter into any evaluation of the reasonableness of the board’s action in refusing this application for an extension—the seventh permit extension sought under section 11-324. Nor may the board’s prior determinations raise the bar of res judicata, for, among other reasons, in cases such as this one, the statutory scheme contemplates that an application for an extension will be determined on the basis of the construction of foundations completed during the term of the preceding extension. (§ 11-324.)
The case resolves itself then to a consideration of whether Lefrak acquired a vested right to complete construction. I think not.
The Appellate Division’s holding to the contrary simply will not withstand a traditional vested rights analysis. The right is one of private property and is secured by the constitutional guarantees against the deprivation of property without due process *804 of law. (City of Buffalo v. Chadeayne, 134 N. Y. 163; People ex rel. Manhattan Sav. Inst. v. Otis, 90 N. Y. 48.) The vested rights theory involves really two rules (see Matter of Dubow v. Ross, 254 App. Div. 706; People ex rel. Ortenberg v. Bales, 224 App. Div. 87, affd. 250 N. Y. 598; Matter of Glenel Realty Corp. v. Worthington, 4 A D 2d 702; Matter of Smith v. Spiegel & Sons, 31 A D 2d 819, supra, affd. 24 N Y 2d 920; 6 N. Y. Jur., Buildings and Building Laws, §§ 12, 13), only one of which has any relevance here. Succinctly stated it is as follows: where a building permit has been validly issued, the privilege to build under the permit matures into a vested right to complete construction when, in reliance upon the permit, the property owner has, in good faith, commenced work of a substantial character on the property, made substantial expenditures, or incurred substantial obligations prior to an amendment to the zoning law which prohibits the intended use. (See, generally, 2 Rathkopf, Law of Zoning and Planning, oh. 57, § 3; Anderson, Zoning Law and Practice in New York, § 6.16, p. 127.)
The instant situation is clearly distinguishable. Here the original building permit for the property in question was-not issued before adoption of the 1960 Zoning Resolution, nor was any construction begun before that date. Rather, the original building plans were filed during the one-year grace period following adoption of the resolution and the original permit was issued some two years later, after the effective date thereof. We are dealing,. then, essentially with a grace period provision and extensions thereof to which reasonable conditions may be attached. In these circumstances, a permitee may not acquire a vested right to an indefinite number of extensions, but rather must meet the reasonable conditions attached to a grant thereof — in this case, substantial construction of foundations. This, petitioner has failed to do.
Implicit in the opinion for the majority at the Appellate Division is a recognition of the inapplicability of the traditional vested rights theory to this case. The Appellate Division has in effect fashioned a balancing of the equities test to determine whether Lefrak has acquired a vested right to complete construction. (See, e.g., 2 Rathkopf, op. cit., supra, ch. 57, § 12,1971 Cum. Supp.; Matter of Humble Oil $ Refining Co. v. Worthingtan, 49 Misc 2d 432, supra; Tremarco Corp. v. Garsio, 32 N. J. 448, supra.) If such a test is to be indulged, I believe the equi *805 ties are with the people of Queens who after more than 11 years and 7 extensions of this building permit and unkept promises of completion are at last entitled to the benefits of the 1960 Zoning Resolution. I might add that this ambitious project to build twin high-rise apartment towers over the right-of-way of the Long Island Rail Road appears to have been hastily conceived to take advantage of the grace period built into the resolution contrary to the spirit of the resolution—witness the original acquisition of the property by Adson, Inc., midway through the grace period, and after Adson’s default the inability to obtain a builder willing to undertake construction.
For the reasons stated, I would reverse the order of the Appellate Division and reinstate the determination of the Board of Standards and Appeals.
Order affirmed, etc.

. That section provides in part:
“11-322
“ Extension of period to complete construction
• “ The Board may extend or renew such building permit in accordance with the following provisions:
“ (a) Por a minor development, the Board may authorize an extension of time limited to one term of not more than one year, to permit the completion of any building, provided that the Board finds that, as of December 15, 1963 substantial construction of foundations had been completed for such building (or each such building), or, in case of a major enlargement which does not require the installation of foundations, a substantial portion of such enlargement had been completed.
“ (b) For a major development, the Board may authorize an extension of time, limited to one term of not more than two years, to permit the continued construction of such development (including the start of new buildings) provided that the Board finds that, as of December 15, 1963, for at least one building of the development substantial construction of foundations had been completed. Thereafter, the Board may authorize an additional extension, limited to one term of not more than one year, solely for the completion of those buildings for which the Board finds that, on or before the date of expiration of the extended building permit, substantial construction of foundations had been completed.”

. That section reads in part:
"11-324
“ Further extensions
“ For minor or major developments for which extensions of time have been authorized in accordance with the provisions of Section 11-322 (Extension of period to complete construction) or Section 11-323 (Extension for development subject to delay), but which have not been completed within the term of the extension, the Board, upon application filed before the expiration date of the term of the preceding extension, may in appropriate cases grant additional extensions of time, each limited to one term not to exceed one year:
“ (a) For the completion of any building for which the Board finds that, on or before the date of expiration of the term of the preceding extension, substantial construction of foundations has been completed, or
*799 “ (b) For the completion of any building for which an extension of time was authorized under the provisions of Section 11-323, but for which substantial construction of foundations has not been completed within the term of the preceding extension, provided that the Board finds that:
“ (1) the criteria under which the preceding extension was permissible would excuse applicant’s failure to complete such amount of construction, or
“ (2) applicant was prevented from completing such amount of construction by other hardship or inequity beyond his control, not including real estate market conditions or difficulties in obtaining the necessary financing.
“ For any such building which is not completed and for which such application for an additional extension of time is not filed before the expiration date of the term of the preceding extension, or is denied, the building permit shall lapse on such expiration date or on the date of such denial.”

. The amended building plans did not, however, increase the degree of nonconformity with the 1960 Zoning Resolution.

. It should also he noted that the intervenors cast doubt on the legitimacy of many of Lefrak’s alleged costs and cómmitments with respect to this” project.

. For example, in the instant ease, under the appropriateness criterion the board might consider the then 11-year interval since adoption of the new zoning resolution; and the representation by Franklin National Bank on the previous application for an extension that the project would be substantially completed during 1971.

. I am satisfied, however, that if the board’s construction of the “appropriateness” criterion is correct, the standard, albeit general, is capable of a reasonable application within the context of the 1960 Zoning Resolution and .is not an invalid delegation of legislative authority. (See, generally, 1 N. Y. Jur., Administrative Law, §§ 44-54.)