◾ In the Matter of JACKSON's MARINA, INC., et al., Petitioners, v THOMAS C. JORLING, as Commissioner of the New York State Department of Environmental Conservation, Respondent. (Proceeding No. 1.) In the Matter of JAMES H. RAMBO, INC., et al., Petitioners, v THOMAS C. JORLING, as Commissioner of the New York State Department of Environmental Conservation, Respondent. (Proceeding No. 2.) [597 NYS2d 749] —Mikoll, J. Proceedings pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which, *inter alia,* found that petitioners violated the terms of a permit to conduct dredging operations.

In proceeding No. 1 Gordon Jackson and Jackson's Marina, Inc. (hereinafter Marina), of which Jackson is president, are the petitioners. Marina is located on Shinnecock Bay, near the southeast entrance of the Shinnecock Canal, in the Town of Southampton, Suffolk County. In proceeding No. 2 Thomas Samuels and James H. Rambo, Inc. (hereinafter Rambo), of which Samuels is president, are petitioners. Rambo is engaged in the dredging business.

The Department of Environmental Conservation (hereinafter DEC) issued Marina a permit pursuant to powers granted it in ECL article 15 (Protection of Waters) and ECL article 25 (Tidal Wetlands) on March 19, 1986 allowing Marina to dredge and build a bulkhead to expand Marina's facilities. On March 26, 1987 respondent issued an amendment to the permit authorizing Marina "to have water discharge into South entrance of Shinnecock Canal at Shinnecock Bay. Discharge should be located as per plan south of Montauk Hwy with baffle and diffuser."

In performing hydraulic dredging Rambo would first use a cutter head to penetrate the bottom of the bay and suck up water and sediment, called dredge spoil. The spoil is then suspended and pumped to a spoil disposal site in a diked area. The spoil was carried by a pipe, called the dredge pipe, approximately 1,500 feet in length to the diked area. At that point another three pipes, called spill pipes, carried the effluent, consisting mostly of water, from the diked area into the Shinnecock Canal. A baffle and diffuser, used to disperse the water and material contained in the effluent over a large area and to aerate the water, thereby lessening the turbidity of the water and helping to protect the marine life at a discharge location, was placed on the dredge pipe but not on the three spill pipes.

On April 20, 1987 DEC charged all four petitioners with violating certain provisions of the amended permit by discharging effluent at an unapproved location north of Montauk Highway and in not placing any baffle or diffuser on the spill pipes. At a meeting on April 21, 1987, it was agreed that the dredging operation could continue once the effluent discharge was moved to a point south of Montauk Highway, which was done. The bulkhead extension was completed in April 1987. Subsequently, DEC determined that the bulkhead was not built according to permit specifications.

In July 1989 respondent initiated two administrative proceedings against petitioners charging violations of ECL articles 15, 25 and 71. The first proceeding alleged that petitioners (1) on or about April 19, 1987 caused dredged material effluent to be discharged at an unapproved location north of Montauk Highway, (2) on or about April 19, 1987 failed to use a baffle and diffuser at the effluent discharge point, and (3) on or about April 13, 14, 15, 16 and 20, 1987 placed discharge for dredge spoil disposal at an unapproved location. The second proceeding charged that on or about May 5, 1988 Marina and Jackson caused "the construction of 565+ linear feet of timber bulk-

head between 0 feet and 24 feet offshore of permitted location in noncompliance with approved plans".

Following a hearing on the charges before an Administrative Law Judge (hereinafter ALJ), all the charges contained in the first proceeding were dismissed because the amended permit did not mandate that the baffle and diffuser be used and that the dredged material be dumped at a certain location but, rather, suggested that these things "should" be done and that Rambo's interpretation of where the spill pipes were to be located was reasonable. However, the ALJ upheld the charge in the second proceeding for which he assessed a $3,000 penalty, finding that the permit for the bulkhead required strict and precise adherence to its specifications. Respondent reviewed the ALJ's determination and modified it, asserting that the amended permit was clear in mandating the use of a baffle and diffuser on the spill pipes and that the discharge of the effluent had to occur south of Montauk Highway. Respondent assessed a $2,000 penalty for this violation and increased the ALJ's penalty on the bulkhead violation to $8,000. Petitioners then commenced the instant proceedings challenging respondent's determination.

In our view respondent's determination is supported by substantial evidence with the exception of the finding of liability against Samuels, as an individual, which is not supported by substantial evidence. The determination should therefore be modified by annulling the finding against Samuels as an individual and, except as so modified, confirmed.

There is sufficient evidence to support respondent's findings against the corporate petitioners, Marina and Rambo. Charles Hamilton, chief of DEC's Marine Regulatory Section of the Bureau of Marine Habitat Protection, Division of Marine Resources, testified concerning the charges in the first proceeding that he observed that the spill pipes were discharging water 150 feet north of Montauk Highway and that no baffle or diffuser was being used as the amended permit required. DEC compliance inspector Joseph Errico testified that the three spill pipes were located north of Montauk Highway, as did petitioners' witness John Guldi. Hamilton also testified that he has written thousands of permits and the word "should" as used in the amended permit is normally used by DEC like the words "shall" and "must" to direct people to do things. Concerning the second proceeding Hamilton testified that the bulkhead did not satisfy the exact specifications of the permit.

Although the ALJ concluded otherwise, respondent could

reasonably conclude on all the evidence that the amended permit required that the effluent discharge be located south of Montauk Highway with a baffle and diffuser. As respondent's interpretation of the amended permit was reasonable, his determination should not be disturbed (see, Matter of Wiggins v Board of Educ., 60 NY2d 385, 388; see also, Matter of Steck v Jorling, 182 AD2d 937, 939, appeal dismissed 80 NY2d 893). The agency's assessment of the credibility of witnesses, inferences to be drawn from the evidence and findings of fact are conclusive if supported by substantial evidence (see, Matter of Puff v Jorling, 188 AD2d 977, 980; see, 6 NYCRR former 661.34 [a]). Respondent's determination in the second proceeding is also supported by substantial evidence (see, Matter of Orange Envt. v Jorling, 161 AD2d 1069, 1070; Matter of Duflo Spray-Chem. v Jorling, 153 AD2d 244, 249-250).

Petitioners' argument that respondent should be estopped from bringing the charges fails because "estoppel may not be invoked against a governmental agency to prevent it from discharging its statutory duties" (Matter of E.F.S. Ventures Corp. v Foster, 71 NY2d 359, 369; see, State of New York v Ferro, 189 AD2d 1018, 1020). Petitioners have also failed to show how they were compromised or prejudiced by an alleged delay in commencement of these proceedings (see, Matter of Cortlandt Nursing Home v Axelrod, 66 NY2d 169, 178, cert denied 476 US 1115; Matter of GASDA, Ltd. v Adduci, 179 AD2d 173, 174-175).

We find no merit to petitioners' argument that respondent made no independent findings of fact and should have adopted the findings of the ALJ, who had the opportunity to view the witnesses. It is well established that respondent may make his own findings of fact and need not adopt those of the ALJ (see, Matter of Wiggins v Board of Educ., 60 NY2d 385, 388, supra; Matter of Pelham v White, 166 AD2d 824, 826).

Petitioners' contention that there is a lack of sufficient evidence to support the finding of liability against Jackson as an individual is not persuasive. Jackson was president of Marina, made the application for the permits, was listed as Marina's agent and participated in the measurement of the bulkhead. Thus, without piercing the corporate veil, Jackson could properly be held liable individually on the basis of his act in measuring the bulkhead (see, State of New York v Shore Realty Corp., 759 F2d 1032, 1052-1053). However, the proof as to Samuels is insufficient to hold him individually liable.

In light of all the circumstances, the penalties imposed

against Marina and Rambo are not shown to be so disproportionate to the offenses as to be shocking to one's sense of fairness and will not be disturbed *(see, Matter of Puff v Jorling,* 188 AD2d 977, 980, *supra).*

We have considered petitioners' other arguments for annulment of the determination and find them unpersuasive.

Weiss, P. J., Levine, Mercure and Mahoney, JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as found petitioner Thomas Samuels individually liable; petition dismissed against said petitioner; and, as so modified, confirmed.