[608 NYS2d 361]

In the Matter of ALDO COLELLA et al., Petitioners, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents. (Proceeding No. 1.)

In the Matter of TEN MILE RIVER HOLDING, LTD., Petitioner, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents. (Proceeding No. 2.)

Third Department, March 3, 1994

### APPEARANCES OF COUNSEL

*Michael F. Dennis,* Garden City *(Saul I. Weinstein* of counsel), for petitioners in Proceeding No. 1.

*Adams, Smith & Berkman P. C.,* Brewster *(Elizabeth D. Hudak* of counsel), for petitioner in Proceeding No. 2.

*G. Oliver Koppell, Attorney-General,* Albany *(Kathleen Liston Morrison, Peter H. Schiff* and *Douglas H. Ward* of counsel), for respondents.

### OPINION OF THE COURT

CASEY, J.

Petitioner Ten Mile River Holding, Ltd. (hereinafter TMR) is the owner of farm land in Dutchess County which had been mined by prior owners and operators in areas denominated as pit Nos. 1, 2 and 3. Respondent Department of Environmental Conservation (hereinafter DEC) granted TMR's application in 1982 to mine sand and gravel based upon a negative declaration which found that TMR proposed to operate a sand and

gravel mining operation in order to level the area disturbed by previous sand and gravel mining and to return the area to agricultural use. The 1982 permit authorized mining in an eight-acre area where mining had already occurred. The permit had a three-year term and expired in May 1985.

In the meantime, petitioner Aldo Colella, acting as TMR's manager, sought to change its mining plan and stated TMR's intent to level and reclaim pit Nos. 1 and 2, using topsoil and other materials from pit No. 3. DEC approved the change and directed TMR to submit updated drawings and written plans as part of its renewal application. In January 1985, TMR entered into an agreement with petitioner M.A.C. Sand & Gravel, Inc. (hereinafter MAC) whereby TMR gave MAC the right to conduct mining operations under TMR's permit. Colella is the sole stockholder and president of MAC.

In May 1985 Colella, acting on behalf of TMR, filed a renewal application with DEC. Thereafter a dispute arose as to the sufficiency of the application, and mining operations on TMR's property ceased. Mining operations resumed in August 1987 although DEC had not granted a renewal of TMR's permit. Respondent Commissioner of Environmental Conservation ordered TMR to cease mining in July 1988, but the determination was annulled by Supreme Court on the ground that TMR had submitted a timely application to renew and, therefore, was authorized to continue mining under State Administrative Procedure Act § 401 (2). DEC ultimately denied the renewal application and the Commissioner upheld the denial. TMR did not seek judicial review of the Commissioner's determination.

In March 1991, DEC commenced the enforcement proceedings at issue herein based upon allegations that petitioners mined outside the permit areas, failed to maintain an adequate reclamation bond, abandoned certain parts of the mining operation, violated the terms of the 1982 permit, disturbed the banks of a stream without a permit, discharged pollutants into the stream without a permit and contravened State water quality standards. After a hearing petitioners were found guilty of the charges and a penalty of $1 million was assessed against petitioners jointly and severally. A penalty of $500,000 was assessed against TMR individually.

■ Petitioners contend that substantial evidence is lacking to support the determination of guilt of the various charges. Based upon our review of the record, we find the evidence

sufficient under the relevant standard of judicial review (see, e.g., Matter of Pell v Board of Educ., 34 NY2d 222, 231), except as to the finding of abandonment. Although not discussed in detail, we have considered petitioners' arguments on the substantial evidence issue and find most of them unpersuasive. Many of the arguments concern the credibility and weight to be assigned certain evidence, which are matters to be decided by the administrative agency (see, Matter of Jackson's Marina v Jorling, 193 AD2d 863, 866).

The finding that petitioners mined for at least 94 days outside the area allowed by the 1982 permit is supported by the testimony of DEC personnel concerning their observations at the site and a map prepared by a geologist in 1990 at TMR's request. There is also evidence that in 1988 Colella and Jack Harbold, an employee of both TMR and Colella, were ticketed for operating mining equipment in the unpermitted floodplain area. Both tickets resulted in convictions against TMR. The number of days was determined on the basis of the volume of material removed from the unpermitted area, as determined from the geologist's map and on-site observations by a DEC employee, and the average amount of material removed in a day by the method used by petitioners within the permitted area. There is no evidence in the record that anyone other than petitioners mined in the unpermitted area.

The finding that petitioners constructed an unauthorized haulage road is supported by undisputed evidence that a new haulage road into pit No. 3, which differed from the road on the plan approved by DEC, was constructed without DEC approval. That approval was obtained from other governmental agencies did not obviate the need for DEC approval (see, ECL 23-2713 [1] [a]; 23-2705 [4]; 6 NYCRR 422.2 [b] [4]).

The finding that TMR failed to post an adequate reclamation bond (see, ECL former 23-2717, renum 23-2715 and amended by L 1991, ch 166, § 232) is supported by evidence that TMR posted a $90,000 bond after its first letter of credit expired, while the area affected by the mining activity required a bond of at least $150,000. DEC requested in September 1990 that TMR post an additional bond in the amount of $104,200, which TMR failed to do. DEC later calculated the cost of reclamation to be at least $750,000.

The finding on the issue of reclamation is similarly supported by the record. ECL former 23-2715 required reclamation to be performed in accordance with the approved plan,

and TMR's 1982 permit required that mining be done progressively, with completed portions of each pit reclaimed and returned to agricultural use. The reclamation concept approved in the permit included stream-fed ponds in pit Nos.1 and 3, and the permit required that until the land is returned to agricultural purposes, berms and sedimentation collection areas be provided to avoid sedimentation of the nearby Ten Mile River. The record includes testimony that some grading and seeding had been done in pit No. 1, but it was unacceptable due to the absence of topsoil, exposed bedrock and lack of vegetation. Only a very small section of pit No. 2 was mined, but no reclamation was done, despite TMR's stated intention to level pit No. 2 using material from pit No. 3. TMR's claim that it was precluded from presenting evidence at the hearing on the issue of reclamation in pit No. 2 is not supported by the record. The land located in pit No. 3 was prime agricultural land, and no more than an acre of pit No. 3 had been mined by early 1985. By October 1990, an additional 45.5 acres had been mined in and adjacent to pit No. 3, but no reclamation had been performed in the area. TMR's July 1991 proposal to construct an 18-to-22-acre pond in the area of pit No. 3 was rejected by DEC as not within the scope of the approved reclamation plan included with the permit. DEC's conclusion that the prior conceptual approval of a pond did not encompass such a large pond in an area where no mining was to occur is a rational determination within DEC's expertise which we will not disturb (see, Flacke v Onondaga Landfill Sys., 69 NY2d 355). There is substantial evidence in the record to support the conclusion that no effort was made to perform the continuing reclamation concurrent with mining as required by the approval plan in the permit. There is no merit in TMR's claim that no reclamation was required until all legal proceedings were completed.

■ The determination found that ECL 71-1305 (3), which prohibits abandonment of a mine without DEC approval, had been violated as early as May 1982, despite the fact that DEC issued a permit in May 1982 and mining activity continued on the premises until May 1985 and resumed again in August 1987. Although the record supports the conclusion that areas of the mine where the mining operations had been completed were not reclaimed as required by the approved plan, there is no basis for finding a separate violation of ECL 71-1305 (3) for the same omission. Respondents note that all mining ceased at the premises from May 1985 to August 1987, but the finding

of abandonment is not limited to that time period. It is clear from the record that the finding of abandonment is inextricably intertwined with the failure to reclaim, and we are of the view that although there is substantial evidence in the record to support the findings on the failure to reclaim charge, the record does not support the additional finding of abandonment.

As to the finding that petitioners violated ECL 17-0501 and 17-0803, there is evidence in the record that a ditch was constructed at Colella's direction in 1987 to divert water from the mining area in the vicinity of pit No. 3. Petitioners contend that the ditch did not go all of the way to the Ten Mile River, but there is testimony to the contrary and testimony that water diverted from the mine by the ditch discharged into the river, which is a class C(T) stream, having fishing as its best usage *(see,* 6 NYCRR 701.8). There is also testimony that the waters discharged into the river by the ditch were discolored with sediment and increased the turbidity and sediment in the river. DEC presented evidence that the discharge had an adverse impact on a major fishery. The absence of dead fish does not, as petitioners suggest, affect the credibility of this testimony.

The finding that petitioners disturbed the banks of the Ten Mile River is supported by testimony that construction of the drainage ditch involved the removal of sand and gravel from the river's banks. There was also testimony of cuts in the bank line, that a swath or pathway had been constructed to allow drainage and that equipment was driven across the river.

Other than as previously discussed on the issue of abandonment, petitioners' various challenges to the quality and quantity of the evidence relied upon by the Commissioner as the basis for his determination do not, in our view, establish that the requisite substantial evidence is lacking.

■ MAC and Colella raise a procedural issue, alleging bias on the part of the Administrative Law Judge, but the issue was not raised at the administrative level and was therefore waived *(see, Matter of Kessel v Public Serv. Commn.,* 123 AD2d 203). In any event, there is no evidence of bias or that the outcome of the case resulted from the alleged bias *(see, Matter of Hughes v Suffolk County Dept. of Civ. Serv.,* 74 NY2d 833). We also reject the claim of MAC and Colella that they were entitled to a jury trial.

■ Turning to the penalty, a fine of $1.5 million was imposed. Of that amount, $500,000 was imposed against TMR individually for its failure to maintain an adequate reclamation bond and its failure to reclaim pit No. 2, where mining had ceased before MAC began to operate the mine. The remaining $1 million was imposed against TMR, MAC and Colella jointly and severally. As to the violations which consist of acts of commission, there is substantial evidence in the record to support the conclusion that Colella was directly and personally involved in the illegal conduct. Colella's claim that some of the illegal conduct might have been conduct by other persons or other entities is pure speculation. Colella is liable on the basis of his personal involvement (see, Matter of Jackson's Marina v Jorling, 193 AD2d 863, 866, supra), and MAC is liable as his employer (see, Ruszkowski v Sears, Roebuck & Co., 188 AD2d 967, 968, lv denied 82 NY2d 654). The evidence also supports the conclusion that Colella continued to act as TMR's agent after MAC was granted the right to mine under TMR's permit, and that TMR knew of Colella's illegal conduct and did nothing to stop it. Accordingly, there is no basis to disturb the imposition of joint and several liability as to the acts of commission.

■ As to the acts of omission concerning the failure to comply with the progressive reclamation requirements of the approved mined land use plan which included the requirement of sedimentation collection area and berms, we are of the view that MAC and Colella cannot be held responsible under the Mined Land Reclamation Law (ECL art 23, tit 27) as it existed while MAC operated the mine. The obligation to fulfill the requirements of the approved plan was imposed upon the "applicant" (ECL 23-2705 [former (2)]), not the operator (see, ECL 23-2705 [former (9)]). It is undisputed that TMR was the "applicant" and that neither MAC nor Colella was an "applicant". They cannot, therefore, be subject to liability for the lack of compliance with the requirements imposed upon the "applicant" by the Mined Land Reclamation Law.

■ Although the determination includes calculations of the maximum possible fines for each violation, the penalty was imposed in lump sums of $1 million and $500,000, with no breakdown for each violation. We have previously rejected lump-sum penalties as insufficient to permit adequate judicial review (see, Matter of Eden Park Health Servs. v Whalen, 73 AD2d 993). Inasmuch as the matter must be remitted to the

Commissioner to redetermine the penalty as a result of our conclusions on the abandonment issue and the liability of MAC and Colella for TMR's failure to perform the reclamation required by the approved mined land use plan, we conclude that it would be appropriate for the Commissioner to specify the amount of the penalty for each violation. We have considered petitioners' other arguments and find them meritless.

CARDONA, P. J., MIKOLL, WHITE and YESAWICH JR., JJ., concur.

Adjudged that the determination is modified, without costs, by annulling so much thereof as found an abandonment within the meaning of ECL 71-1305 (3) and found petitioners M.A.C. Sand and Gravel, Inc. and Aldo Colella responsible for the lack of compliance with the reclamation provisions of the approved mined land use plan; petitions granted to that extent and matters remitted to respondent Commissioner of Environmental Conservation for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.