■ In the Matter of AL TURI LANDFILL, INC., Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents. [735 NYS2d 61] —In a proceeding pursuant to CPLR article 78 to review a determination of the Commissioner of the New York State Department of Environmental Conservation dated April 15, 1999, which, after a hearing, denied the petitioner's application for an expansion permit for its landfill located in the Town of Goshen, the appeal is from a judgment of the Supreme Court, Orange County (Leavitt, J.), dated February 1, 2000, which denied the petition in part, and transferred the matter to this court for determination of the issue as to whether the determination is supported by substantial evidence.

Ordered that the appeal is dismissed, and the judgment is vacated, on the law; and it is further,

Adjudged that the determination is confirmed, and the proceeding is dismissed, on the merits; and it is further,

Ordered that the respondent is awarded one bill of costs.

Since the petition raises a substantial evidence question, and the remaining points raised by the petitioner that were disposed of by the Supreme Court were not objections that could have terminated the proceeding within the meaning of CPLR 7804 (g), the Supreme Court should have transferred the entire proceeding to the Appellate Division (*see, Matter of Duso v Kralik,* 216 AD2d 297; *Matter of Reape v Gunn,* 154 AD2d 682). Nonetheless, since the record is now before us, this Court will treat the proceeding as if it had been properly transferred here in its entirety (*see, Matter of Duso v Kralik, supra*).

Following a hearing, the respondent Commissioner of the New York State Department of Environmental Conservation (hereinafter the Commissioner) adopted the recommendation

of an Administrative Law Judge to deny the petitioner an expansion permit for its landfill. The petitioner commenced this proceeding pursuant to CPLR article 78 asserting, *inter alia*, that the determination was not based upon substantial evidence.

The determination that the petitioner is unsuitable for a permit for its proposed landfill expansion is supported by substantial evidence in the record (*see, Matter of Purdy v Kreisberg,* 47 NY2d 354; *300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 180). In the present proceeding, the record established that the petitioner and its principals were convicted of crimes that occurred over a three-decade period, and involve the filing of false tax returns, accepting checks on fictitious invoices, and mail fraud. Contrary to the petitioner's contention, the need for the landfill expansion did not outweigh the petitioner's unsuitability.

Moreover, we find that there was no violation of New York Correction Law § 752 in light of the "direct relationship between one or more of the previous criminal offenses and the specific license of employment sought" (Correction Law § 752 [1]). Here, the elements inherent in the criminal conduct for which the petitioner and its principals were convicted, to wit, dishonesty, lack of integrity in conducting business, and a willingness to mislead the government, have a direct relationship to the duties and responsibilities inherent in the license sought, including accurate record keeping, effective self-policing, and honest self-reporting to the government (*see,* Correction Law § 750 [3]; *see also, Stewart v Civil Serv. Commn.,* 84 AD2d 491).

The petitioner's remaining contentions are without merit.
Santucci, J. P., S. Miller and Crane, JJ., concur.

Schmidt, J., concurs in part and dissents in part and votes to annul the determination dated April 15, 1999, and remit the matter to the respondents for further proceedings consistent herewith with the following memorandum, in which Friedmann, J., concurs. I find the determination by the Commissioner to be arbitrary and capricious and one which deprived the petitioner Al Turi Landfill, Inc., of the equal protection of the law. Accordingly, I respectfully dissent. It is apparent from the record that Al Turi's application for a landfill expansion permit was treated differently by the Department of Environmental Conservation (hereinafter the DEC) than other applications submitted by similarly-situated applicants. Accordingly, I would annul the Commissioner's determination and remand the subject application to the DEC for further proceedings.

A decision of an administrative agency, which neither adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts, is arbitrary and capricious (*see, Matter of Field Delivery Serv. [Roberts]*, 66 NY2d 516). An agency's stated reasons for reaching a different result on similar facts cannot be frivolous and must be reasonable based on the evidence in the record (*see, Matter of Fitzgerald*, 262 App Div 393; *G. J. & S. Pizza v McLaughlin*, 78 AD2d 653). An agency's failure to provide a valid and rational explanation for its departure from its prior precedent mandates a reversal, even though there may be substantial evidence in the record to otherwise support the determination (*see, Matter of Field Delivery Serv., supra*, at 520). In order to have precedential effect, the prior decision must have "sufficient factual similarity" with the application pending before the agency (*see, Matter of Field Delivery Serv., supra*, at 521). Here, the denial by the DEC of the petitioner's application for a landfill expansion permit is inconsistent with a number of agency precedents and the reasons offered for these departures have no rational basis in the record.

The denial of the petitioner's permit is a clear departure from the precedent established by the DEC in *Matter of A-1 Compaction Corp.*, Decision of the Commissioner, June 22, 1994. There the operator of a solid waste facility, with a problematic environmental record, was granted renewal of its solid waste management permit despite Federal convictions of both the corporate entity and its sole shareholder on charges of bribery and conspiracy in connection with operation of the solid waste management facility. As demonstrated by the record, the respondents in *A-1 Compaction Corp.* (hereinafter *A-1*) also violated various DEC solid waste operating regulations and had illegally operated an unpermitted landfill for many years. Despite this record, *A-1* was granted a renewal of its solid waste permits upon a finding by the DEC that *A-1*'s record didn't "demonstrate an extraordinary potential for future compliance problems."

Turning to the application at bar, the Commissioner's specified reasons for not following the *A-1* precedent, when subjected to close analysis, are irrational. The Commissioner attempted to distinguish the criminal convictions in the *A-1* case as being less serious than those at bar, concluding that the bribery and conspiracy counts of which the parties in *A-1* were convicted did not involve the deceit and untruthfulness inherent in the tax-related convictions of the Al Turi parties. This explanation is unreasonable on its face and attempts to draw an arbitrary

distinction between these offenses. The crime of bribery, by its very nature of furthering self-interest at the expense of society, necessarily goes to the heart of dishonesty and untrustworthiness (*see, People v Torres,* 110 AD2d 794, 795). Furthermore, the Commissioner's reliance upon the greater penalties imposed in the Al Turi criminal case, without more, fails to justify the denial of a solid waste permit. The DEC has made no showing of any rational correlation between the length of the prison sentence or size of the monetary fine and the considerations necessarily bearing on the denial or approval of a permit. There is also no logical basis to equate the size of a penalty with the trustworthiness of the applicant to comply with the terms of a solid waste permit. The further lack of any rational basis for the decision is demonstrated by the uncontroverted evidence of Al Turi's substantial history of compliance with environmental regulations when contrasted with the poor record of the *A-1* operation in complying with those regulations.

Similarly, the Commissioner has failed to offer a reasonable rationale for the DEC's failure to follow the precedent established in *Matter of Modern Landfill,* Order on Consent, July 17, 1995. Contrary to the DEC's arguments, the record demonstrates that the petitioner has established that the facts in the *Modern Landfill* case are sufficiently similar to the facts at bar to permit it to be considered an established precedent. In *Modern Landfill,* the DEC accepted a trust arrangement under a consent order with the landfill operator, on a set of facts strikingly similar to those at bar. Modern Landfill's sole shareholder was convicted on Federal racketeering charges for engaging in a pattern of bribing local public officials which, as noted above, are crimes involving "dishonesty and untruthfulness." The DEC was able to satisfy its concerns about Modern Landfill's fitness to hold a solid waste permit by accepting a trust agreement, with DEC and Federal oversight, which effectively removed the principal from control of the landfill facility. While Al Turi's principals assert they are fit to hold the DEC permit, they have nevertheless proposed an almost identical trust arrangement, agreeing to place their ownership interests in trust, under the same independent oversight found acceptable in *Modern Landfill.*

The DEC has rejected this proposal, the Commissioner stating that the proposal failed to alleviate the concerns of the DEC about Al Turi's conduct. The justification offered for rejection of the *Modern Landfill* precedent, was first, that *Modern Landfill* predated the current Commissioner's tenure, and second, that the burden of monitoring the trust in this case

would be "extraordinary," amounting to a "practical impossibility" if DEC staff were expected to police the trust. These conclusory and unsupported contentions, arguably based on the DEC's experience with the *Modern Landfill* trust agreement, have absolutely no evidentiary basis in the record. It appears that the responsibilities of the DEC staff in monitoring a trust agreement are relatively minor and of infrequent occurrence; approval of trustees and successor trustees, approval of amendments that may be proposed to the trust agreement, and consent over any proposed corporate mergers. The petitioner has noted that any of the additional provisions requiring oversight by DEC were included in the draft agreement at the specific request of DEC staff. In short, the Commissioner has offered no rational basis to justify such a cursory and unreasoned rejection of the *Modern Landfill* trust precedent.

Finally, the arbitrary and capricious nature of the Commissioner's decision in this case is demonstrated by his recent decision in the case of *Matter of Application for Permits to Operate a Solid Waste Mgt. Facility, the Towpath Envtl. & Recycling Ctr.*, Interim Decision of the Commissioner, May 15, 2000. In the *Towpath* determination, decided after rejection of the Al Turi permit application, the Commissioner overruled the finding of an Administrative Law Judge and determined that no adjudicable issue had been raised regarding the applicant's fitness to hold permits, despite its problematic record of environmental compliance. Following the issues conference, the Administrative Law Judge found the applicant, Waste Management of New York, had been cited and fined for numerous environmental violations at its various solid waste facilities and further documented the myriad violations and large monetary penalties imposed on its corporate parent and affiliates. Nevertheless, the Commissioner concluded that these violations did not raise an adjudicable issue, stating that he was basing this determination on the applicant's long involvement as a DEC permittee; the sufficient length of time that had elapsed since the violations; the inclusion in the draft permit of conditions designed to address the DEC's compliance concerns; and the lack of proof that the employees responsible for the prior violations would have any substantial role in the proposed project.

It is clear that each of the mitigating factors the Commissioner deemed significant in the *Towpath* case are equally applicable to Al Turi and its principals. The record amply demonstrates the applicability of these same factors to the Al Turi petitioners, including their long history and generally pos-

itive environmental record as a DEC permittee, the rehabilitation of the petitioner after the prior criminal acts, and the trust agreement proposal which would effectively remove the culpable individuals from any future role in the expanded facility. It appears that the standard applied by the DEC in other determinations, i.e., whether the criminal violations and/or compliance problems are so severe and pervasive that the grant of the permit on any terms is too risky (*see, Matter of Laidlaw Envtl. Servs.*, Decision of the Commr., June 28, 1994; *see also, Matter of A-1 Compaction Corp., supra; Matter of SES Brooklyn Co., L. P.*, Interim Decision of the Commr., Sept. 9, 1993) has been abandoned here. The DEC has failed to provide a valid and rational basis for its departure from established precedent, thereby rendering the Commissioner's decision arbitrary and capricious. Even though the majority has found substantial evidence in the record to otherwise support the Commissioner's determination, the departures from established precedent mandate a reversal. Accordingly, I would annul the determination and remit the matter for further proceedings.