■ In the Matter of BRADLEY CORPORATE PARK et al., Appellants, v ERIN M. CROTTY et al., Respondents. (Proceeding No. 1.) In the Matter of BRADLEY CORPORATE PARK et al., Appellants, v ERIN M. CROTTY et al., Respondents. (Proceeding No. 2.) [835 NYS2d 254]—

In a proceeding pursuant to CPLR article 78 to review a determination of Erin M. Crotty, Commissioner of the New York State Department of Environmental Conservation, dated June 18, 2001, which adopted the findings and conclusions of two Administrative Law Judges, made after a hearing, that the petitioners violated ECL article 24 and 6 NYCRR 663.4, and a related proceeding to review a determination of Erin M. Crotty, Commissioner of the New York State Department of Environmental Conservation, dated January 21, 2004, which adopted, in part, the findings and conclusions of an Administrative Law Judge, made after a separate hearing, and, among other things, imposed a penalty upon the petitioners in the sum of $120,000 and directed them to submit a remediation and restoration plan to the New York State Department of Environmental Conservation, the petitioners appeal, as limited by their brief, from stated portions of an order of the Supreme Court, Rockland County (Smith, J.), dated July 18, 2005, which, inter alia, transferred a portion of the proceedings to this Court to decide whether the determinations were supported by substantial evidence.

Ordered that the appeal is dismissed and the order is vacated; and it is further,

Adjudged that the determinations are confirmed, the petitions are denied, and the proceedings are dismissed on the merits; and it is further,

Ordered that the petitioners' time to pay the penalty is extended until 120 days after service upon them of a copy of this decision, order, and judgment; and it is further,

Ordered that the petitioners' time to submit a remediation and restoration plan to the New York State Department of Environmental Conservation is extended until 90 days after service upon them of a copy of this decision, order, and judgment; and it is further,

Ordered that one bill of costs is awarded to the respondents.

Since the petitions raise a substantial evidence question, and the remaining points raised by the petitioners and disposed of by the Supreme Court were not objections that could have terminated the proceedings within the meaning of CPLR 7804 (g), the Supreme Court should have transferred the proceedings in their entirety to the Appellate Division (*see Matter of Al Turi Landfill v New York State Dept. of Envtl. Conservation,* 289

AD2d 231 [2001], *affd* 98 NY2d 758 [2002]; *Matter of Steck v Jorling,* 219 AD2d 727, 727-728 [1995]). Nonetheless, since the record is before us, this Court will treat the proceedings as if they had been properly transferred here in their entirety (*see Matter of Al Turi Landfill v New York State Dept. of Envtl. Conservation, supra* at 231; *Matter of Steck v Jorling, supra* at 727-728).

The respondent Erin M. Crotty (hereinafter the Commissioner), who is the commissioner of the respondent New York State Department of Environmental Conservation (hereinafter the DEC), adopted the findings and conclusions of two Administrative Law Judges, made after a hearing, that the petitioners violated the Freshwater Wetlands Act (ECL art 24) by performing certain construction activities in a freshwater wetland, as well as on its "adjacent area" (6 NYCRR 663.2 [b]), without a DEC permit. The initial issue to be resolved is whether the record contains substantial evidence to support this determination. Determining whether substantial evidence exists requires a reviewing court to look at the entire record before the administrative agency and ascertain "whether sufficient proof exists from which 'an inference . . . of the [facts] found may be drawn reasonably' and once it makes a determination as to this quantum of evidence—roughly that needed for a court to submit a question of fact to a jury—its task is complete" (*Matter of Furey v County of Suffolk,* 105 AD2d 41, 43 [1984], quoting *Matter of Stork Rest. v Boland,* 282 NY 256, 273 [1940]; *see also 300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180-181 [1978]). "In the final analysis, it is not the function of the reviewing court to weigh the evidence or substitute its own judgment for that of an administrative body to whose expertise a subject matter has been entrusted, but rather to determine whether there is a 'reasonable fulcrum of support in the record' to sustain the body's findings" (*Matter of Furey v County of Suffolk, supra* at 43-44, quoting *Matter of Paulsen [Catherwood],* 27 AD2d 493, 495 [1967]).

With these guidelines in mind, the testimony and exhibits from the administrative hearing must be reviewed to decide whether it was "so substantial" that the Commissioner could "reasonably" find that the petitioner's construction site was within the wetland or its adjacent area (*300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra* at 179-180). As correctly pointed out in the hearing report by the Administrative Law Judges, resolution of this issue largely turns on which of two lines depicting wetlands boundaries placed on the official map by the petitioners' landscape architect represented the

actual boundary of the state-regulated wetland. The ambiguity on the official map arose as follows: On February 27, 1996 Roger Torgersen, who was a "landscape architect" hired by the petitioner Bradley Corporate Park to perform work in connection with certain expansion at its corporate park in Rockland County, flagged what he believed to be the freshwater wetland's boundary. According to his boundary lines, there were 5.075 acres of wetlands. On May 31, 1996 the United States Army Corps of Engineers (hereinafter the ACOE), which regulates "federal" freshwater wetlands, sent representatives to the corporate park to verify the freshwater wetland's boundary. The ACOE's representatives determined that there were actually 5.535 acres of wetlands and expanded certain portions of Torgersen's boundary. Torgersen then had an engineer prepare a "site plan for [the] Park," which depicted the project. The site plan also depicted Torgersen's boundary lines of the freshwater wetland (which was represented by a thin line that was drawn through all of the flags that Torgersen had placed), the ACOE's boundary lines of the freshwater wetland (which was represented by a thick line that generally followed the line representing Torgersen's boundary, except for three areas where it jutted out), and the boundary of the adjacent area (which was represented by a "dash-dot-dot-dash" line). It was undisputed that the line representing the adjacent area's boundary was based on the line representing the ACOE's boundary lines of the freshwater wetland. In 1999 Torgersen asked the DEC to re-certify the freshwater wetland's boundary. He provided the DEC with a copy of the 1996 site plan for the corporate park which contained only one change. He wrote the word "wetlands" within two of the areas where the thick line representing the ACOE's boundary lines of the freshwater wetland jutted away from the thinner line representing his boundary lines of the freshwater wetland. This map was then certified by the DEC in a signature block stating, "the freshwater wetland boundary as represented on these plans accurately depicts the limits of freshwater wetlands NA-4 as delineated by Robert Torgersen on 2/27/96."

Despite the admitted ambiguity as to which line on the map depicted the correct boundary of the wetland, there was sufficient proof to reasonably conclude, as the Commissioner did, that both DEC staff and the petitioners' representatives considered the thicker ACOE line as the relevant wetland boundary. First, when Torgersen asked the DEC for its certification, Torgersen represented that there were 5.535 acres of freshwater wetland in the area, an area of wetland that coincided with the ACOE wetland boundary line. Second, the

dotted line representing the adjacent wetland area on the site plan for the park was based on the line that was used to represent the ACOE's boundary of the freshwater wetland. Additionally, in 1997, when the petitioners sought permission from the DEC to expand another building within the park, the plans submitted in conjunction with that application depicted a freshwater wetland boundary which "matched up" with the ACOE boundary. Lastly, in 1999, when Torgersen asked the DEC for its recertification of the wetlands and submitted the copy of the site plan, he left in the thicker line that represented the ACOE's boundary lines of the freshwater wetland and the line that represented the adjacent area, which was still based on the line that represented the ACOE's boundary. Moreover, he added the word "wetlands" to the areas where the line representing the ACOE's boundary extended away from the line that represented his boundary.

Contrary to the view of our dissenting colleague, and in light of the record evidence showing that flagged line was inaccurate and obsolete, the boundary of the state-regulated wetland was not limited to the line depicting Torgersen's February 27, 1996 flagging of the wetland boundary simply because the 1999 DEC certification referenced that line. Otherwise, there would have been no reason for the petitioners' own consultant to include the larger wetland area on the map he submitted to the DEC for recertification. Additionally, we note that the credibility and weight to be assigned certain evidence are matters to be decided by the administrative agency (*see Matter of Colella v New York State Dept. of Envtl. Conservation,* 196 AD2d 162, 166 [1994]). Accordingly, the Commissioner's determination that the petitioners violated the Freshwater Wetlands Act by performing certain construction activities in a freshwater wetland, as well as on its "adjacent area" without a DEC permit is supported by substantial evidence and cannot be disturbed (*see Matter of Chester Indus. Park Assoc. v Cahill,* 295 AD2d 508 [2002]; *see also Matter of Halperin v City of New Rochelle,* 24 AD3d 768, 769-770 [2005]; CPLR 7803 [4]).

The Commissioner also adopted the findings and conclusions of an Administrative Law Judge, made after a separate hearing, inter alia, that the petitioners should be required to perform certain activities on the adjacent area in order to restore that land to the condition that it was in prior to the violations. Contrary to the contention of the petitioners, she had the power to direct them to perform those activities (*see* ECL 71-2303 [1]; *see also Zappone v Home Ins. Co.,* 55 NY2d 131, 137 [1982]; ECL 24-0103, 24-0701 [2]; 71-2307). Furthermore, her determination

to require the performance of those activities is supported by substantial evidence (*see Matter of Halperin v City of New Rochelle, supra* at 769-770).

The petitioners' remaining contentions are not properly before this Court (*see Matter of All County Ready Mix Corp. v Martinez,* 23 AD3d 554, 554-555 [2005]; *Matter of Willets Point Contr. Corp. v Department of Motor Vehs. of State of N.Y.,* 227 AD2d 411 [1996]; *see also Matter of Stoves & Stone, Ltd. v Martinez,* 17 AD3d 683, 684 [2005]; *Matter of David v Christian,* 134 AD2d 349 [1987]), or are without merit. Ritter, Lunn and Angiolillo, JJ., concur.

Spolzino, J.P. (dissenting and voting to grant the petitions in their entirety and annul the determinations with the following memorandum): The issue presented in this matter, as I see it, is whether a finding that a developer has violated the Freshwater Wetlands Act (ECL art 24) may be sustained in the absence of evidence that the developer's activities were conducted in a wetland as defined in that statute, solely on the basis of proof that the Department of Environmental Conservation (hereinafter the DEC) considered the area in which the activities took place to be a part of the wetland. While I agree that, in light of the forgiving standard of review that we apply (*see Matter of Berenhaus v Ward,* 70 NY2d 436, 443-444 [1987]; *Watts v New York State Dept. of Envtl. Conservation,* 36 AD3d 622 [2007]; *Matter of Kroft v New York State Dept. of Envtl. Conservation,* 7 AD3d 714 [2004]), the record contains substantial evidence to support a finding as to the DEC's understanding, I do not agree that such a conclusion is sufficient to support the conclusion that the petitioners violated the Freshwater Wetlands Act. Because, in my view, the only evidence in the record as to the actual location of the wetland is the wetland boundary as delineated in the field, the DEC's acceptance of which is reflected in its written certification, and it is undisputed that the allegedly offending activities were not conducted within that boundary, I would grant the petitions and annul the determinations. I therefore dissent, respectfully.

There is no real dispute about the facts here. The petitioners were charged in an administrative complaint with conducting grading, excavation, filling, and construction activities within freshwater wetland NA-4 and its associated adjacent area without a permit, in violation of ECL 24-0701 (2) and 6 NYCRR 663.4. The petitioners do not dispute that they engaged in activities that, if conducted in a wetland or its adjacent area, would require a permit and that they had no permit to conduct such activities. The only issue is whether those activities were

conducted in a wetland governed by the Freshwater Wetlands Act. As the administrative law judges who heard the testimony stated: "The official DEC map depicting the boundary of freshwater wetland NA-4 on the [petitioners'] property is unclear and has two lines which may be the boundary of NA-4. One line, advanced by the [petitioners], contains 5.075 acres of wetland and the other, advanced by DEC Staff, contains 5.535 acres of wetland. If the line advanced by the [petitioners] is the actual boundary, then no construction activity occurred in NA-4. If the line advanced by DEC Staff is the actual boundary, the construction activity occurred within NA-4."

· The facts relevant to the genesis of the divergent wetland boundary lines are largely as found by the DEC's administrative law judges and as set forth by my colleagues in the majority. In preparation for construction, the petitioners' landscape architect Robert Torgersen in February 1996 delineated the boundaries of the freshwater wetland on the property, finding there to be 5.075 acres of wetlands and placing appropriate markings in the field. The petitioners' surveyor then prepared a site plan on which he depicted the boundary of the wetland with a thin line labeled "Freshwater Wetlands Flagged 2/27/96 by Robert G. Torgersen." Thereafter, the United States Army Corps of Engineers (hereinafter the ACOE) conducted a field inspection and communicated to Torgersen its determination that the boundaries of federally-regulated wetlands on the property encompassed a larger area of 5.535 acres. Torgersen delineated the area identified by the ACOE with a thick line, labeling it "Revised Wetlands Limit Requested by AEC [sic] 5/8/96." The site plan also defined the boundary of the wetland's adjacent area, i.e., the area within 100 feet of the wetland, in which construction activities are regulated (see ECL 24-0701 [2]; 6 NYCRR 663.2 [z]), on the basis of the wetland area foundby the ACOE. Torgersen submitted the site plan to the DEC's wetlands expert, Dr. Theodore Korpez, who certified the state-regulated wetlands by signing a statement on the map that "the freshwater wetland boundary as represented on these plans accurately depicts the limits of the freshwater wetland NA-4 as delineated by Robert Torgersen on 2/27/96." The language of the certification does not refer to the wetlands designation made by the ACOE.

Torgersen requested in 1999 that the DEC recertify the wetlands on the property for an additional three-year period. He submitted a copy of the 1996 site plan, altered only in that the word "wetlands" was written in the area between the inner line representing the boundary of the state-regulated wetland

and the outer line representing the boundary of the federally-regulated wetland. The DEC granted the request, again attesting on the site plan that "[t]he freshwater wetland boundary as represented on these plans accurately depicts the limits of freshwater wetlands NA-4 as delineated by Robert Torgersen on 2/27/96." As was the case three years earlier, the language of the certification made no reference to the federal wetland designation.

At the hearing on the alleged violations, the DEC proposed to carry its burden by establishing the "understandings" of each of the individuals involved with respect to the location of the state-regulated wetland boundary. Its case rested, largely, on the testimony of Dr. Korpez, who testified, over the petitioners' objection, that, despite the language of the certification on the site plan, it was his understanding that the state-regulated wetland included the area designated by the ACOE. His determination to do so was based, according to his testimony, not on a field inspection of the property, which he did not do, nor on any personal knowledge of the property, which he did not have. Rather, he "adjusted" the boundary of the state-regulated wetland to match the boundary of the federally-regulated wetland that had been determined by the ACOE because he usually defined the state-regulated wetland on the basis of the federal and because Torgersen's submission letter had referred to the wetland as encompassing 5.535 acres. He did so without articulating any basis for his conclusion that the area in question met the definition of a state-regulated wetland, even though he knew that state-regulated wetlands and federally-regulated wetlands are often not coterminous.

After hearing the DEC's evidence, the administrative law judges concluded that "[a]ll of this evidence clearly indicates that both DEC staff and the [petitioners] have understood the boundary of NA-4 to be the thicker line." They concluded, on the basis of such evidence, that the petitioners had, in fact, conducted impermissible activities in the wetland. The Commissioner sustained their determinations and this proceeding pursuant to CPLR article 78 ensued. In my view, that conclusion is not supported by substantial evidence in the record.

The Freshwater Wetlands Act and the regulations that flow from it prohibit building in a wetland or an adjacent area as defined in the statute (see ECL 24-0701; 6 NYCRR 663.4). They say nothing about building in an area that DEC officials "understand" to be a state-regulated wetland or in a wetland that is only regulated under federal law. Critically, state wetlands and federal wetlands are defined by different stan-

dards (*compare* ECL 24-0107 [1], *with* 33 USC § 1362 [7], *and* 33 CFR 328.3 [a], [b]). The DEC's expert recognized this at the hearing on the alleged violations in testifying that the area delineated as a state-regulated wetland can be different from the area delineated as a federally-regulated wetland, and that the state-regulated wetland is almost invariably smaller than the federally-regulated area. Thus, neither the findings of the ACOE with respect to the federally-regulated wetland nor the erroneous depiction of the adjacent area by reference to that determination would, in itself, provide a basis upon which an area beyond that delineated by Torgersen can be considered a state-regulated wetland. While the testimony of Dr. Korpez provides substantial evidence to support the conclusion that he thought the larger area was a state-regulated wetland, there is no evidence to support the proposition, essential to the DEC's case, that the larger area is actually within a state-regulated wetland.

As I see it, the only evidence in the record as to the actual location of the wetland, as opposed to the location where Korpez "understood" it to be, consists of the results of Torgersen's field delineation and the DEC's written certification of that delineation. That certification establishes, in my view, that the state-regulated wetland is located where the map says it is—in the area flagged by Torgersen on February 27, 1996. It is undisputed, however, that the allegedly offending activities did not occur in that area. Thus, I cannot conclude that there is substantial evidence in this record to support the Commissioner's conclusion that the petitioners violated the Freshwater Wetland Act. Accordingly, I would grant the petitions and annul the determinations.