■ In the Matter of RICHARD MANGINI et al., Petitioners, v ROBERT CHRISTOPHER, as Commissioner of the Saratoga County Department of Social Services, et al., Respondents. (And Another Related Proceeding.) [736 NYS2d 180] —Spain, J. Proceedings pursuant to CPLR article 78 (transferred to this Court by orders of the Supreme Court, entered in Albany County) to review two determinations of respondent Commissioner of the New York State Office of Temporary and Disability Assistance, which, inter alia, in proceeding No. 1, sustained the discontinuance of petitioners' temporary housing assistance, and, in proceeding No. 2, sustained the denial of petitioner's application for family assistance.

In October 1998, petitioners, Richard Mangini and Janice Mangini, facing eviction for nonpayment of rent, sought the assistance of respondent Saratoga County Department of Social Services (hereinafter DSS). Finding petitioners' housing uninhabitable, DSS arranged for permanent housing for petitioners and their six children. In May 1999, petitioners were again in rental arrears and facing eviction proceedings. Richard Mangini agreed to contact the landlord to work out nonrent related difficulties, but apparently failed to do so. After the commencement of eviction proceedings, DSS intervened on petitioners' behalf, paid part of the back rent and arranged for the family to remain in their apartment until early September 1999, provided that petitioners pay the landlord $100 per week toward their arrears.

On August 11, 1999, an independent living plan (hereinafter ILP) was developed setting forth petitioners' responsibility to find permanent housing within a specified time period as a

condition for the temporary housing assistance provided by DSS until September 7, 1999 and beyond that date, if needed, subject to petitioners' continued compliance with their responsibilities. The ILP was signed only by Richard Mangini. By September 17, 1999, petitioners were unable to maintain residence at the apartment and applied to DSS for emergency housing and other forms of public assistance. DSS provided the family with temporary housing at a local motel and met with petitioners and developed a new ILP (hereinafter the September ILP), which was signed only by Janice Mangini. According to DSS, it was clearly explained to petitioners that, among other things, pursuant to the September ILP they were both required to find permanent housing and permanent employment (Janice Mangini was already employed at that point), and to report their progress to DSS within specified time periods.

As of October 4, 1999, petitioners had failed to secure permanent housing and only Janice Mangini was employed. Petitioners again applied for emergency housing and other public assistance. On October 4 and 6, 1999, a third ILP (hereinafter the October ILP) was developed which, inter alia, required petitioners to attend a case management meeting with DSS, to attend a meeting with representatives of the Saratoga County Economic Opportunity Council (hereinafter EOC) for assistance in locating housing, and to contact 10 landlords in search of permanent housing. Janice Mangini, however, did not attend the scheduled EOC meeting and Richard Mangini arrived almost two hours late, missing the opportunity to meet with the intended housing assistance counselor. Janice Mangini also failed to attend a case management meeting with DSS personnel scheduled for October 13, 1999 at 9:00 A.M. She called DSS at approximately 9:10 A.M. on that date and informed them that she would not be able to attend because she had contracted head lice. DSS instructed her to send Richard Mangini who had not, as yet, left for the meeting. Upon his very late arrival, Richard Mangini was presented with a notice entitled "Action Taken On Your Request for Assistance" denying the family emergency housing assistance and disqualifying petitioners from receiving housing assistance for 30 days. On that same day, a DSS Child Protective Services (hereinafter CPS) representative advised Richard Mangini that petitioners would no longer be eligible for housing assistance and that if they did not find suitable housing for their children by the afternoon of the next day, CPS would seek a court order removing their children. The following day, petitioners voluntarily surrendered the custody of their children to CPS and requested a fair hear-

ing to, inter alia, contest the October 13, 1999 action discontinuing their housing assistance.

At the fair hearing, DSS submitted documentary evidence which reflects the history of the agency's involvement with petitioners, including documents supporting the agency's assertion that petitioners failed to cooperate throughout the period leading up to and subsequent to the October ILP, and offered the testimony of DSS caseworkers who met regularly with petitioners. Petitioners also testified and offered documentary evidence, arguing that they had made a genuine effort to comply with the requirements of the October ILP but were frustrated in those efforts by a number of factors including Richard Mangini's learning disability and because of the unreasonableness of the requirements.

At the conclusion of the fair hearing, the Administrative Law Judge (hereinafter ALJ) sustained the discontinuance of petitioners' temporary housing assistance (hereinafter determination No. 1). The ALJ found that petitioners had failed to comply with requirements of the September and October ILPs in that they had been provided with numerous opportunities to search out alternatives to dependency on temporary housing assistance, but failed to seek and obtain permanent housing. Further, the ALJ found that the requirements of the ILPs were reasonable, that petitioners had exhibited a pattern of argumentative and uncooperative behavior and an unwillingness to consider reasonable housing alternatives and that they failed to engage in routine housing search activities. Petitioners commenced proceeding No. 1 which, inter alia, challenges that determination.

The second proceeding at issue here involves Richard Mangini's September 17, 1999 application for family assistance, which was denied—according to notice dated October 6, 1999—on the ground that he failed to comply with job search requirements. On February 9, 2000 following a fair hearing, the ALJ issued a determination sustaining DSS' denial of family assistance to Richard Mangini (hereinafter determination No. 2). Richard Mangini commenced proceeding No. 2 which, inter alia, challenges that determination. Both proceedings were transferred to this Court pursuant to CPLR 7804 (g).[1]

Initially, we reject petitioners' contention that DSS failed to

1. Each of the proceedings before this Court include hybrid petitions/complaints in which petitioners not only seek review of each of the two subject determinations, but also purport to seek declaratory relief and monetary damages for alleged failure of DSS to comply with state regulations and/or the Social Services Law.

provide them with adequate notice. Specifically, petitioners contend that the October 13, 1999 notice was defective in 4 ways: (1) that it incorrectly states that it pertains to an *October 13, 1999* request by petitioners for emergency housing (the actual applications for housing assistance appear to have been made on September 17, 1999 and October 4, 1999); (2) that the notice states that the reason for the termination was their failure to abide by the terms of the ILP signed on *October 8, 1999,* but that no ILP was executed on that date (the October ILP is dated and signed October 4, 1999 and October 6, 1999);[2] (3) that the term "failure to cooperate" contained in the notice was not properly defined; and (4) that the notice fails to specifically cite to sections of applicable law, asserting that the general citations contained in the notice were insufficient.

"It is axiomatic that due process precludes the deprivation of a person's substantial rights in an administrative proceeding because of uncharged misconduct * * * and it necessarily follows, therefore, that a respondent in such a proceeding is entitled to fair notice of the charges against him or her so that he or she may prepare and present an adequate defense and thereby have an opportunity to be heard * * *" (*Matter of Block v Ambach*, 73 NY2d 323, 332 [citations omitted]). However, charges contained in the notice of an agency action "need only be reasonably specific, in light of all the relevant circumstances," so as to apprise the party who is the subject of the hearing and to allow such party to prepare an adequate defense (*id.*, at 333; *see, Matter of Garofalo v Dowling*, 223 AD2d 770, 772). Moreover, minor discrepancies or typographical errors as to dates contained in such a notice do not require the annulment of a determination where the notice contains sufficient detail to provide parties with notice of the charges against them and an opportunity to prepare a defense (*see, Matter of Emes Heating & Plumbing Contrs. v McGowen*, 279 AD2d 819, 822, *lv denied* 96 NY2d 713; *Matter of Campbell v Stinson*, 269 AD2d 631, 631, *appeal dismissed* 95 NY2d 848).

Petitioners' contentions as to the alleged defective nature of the notice are unavailing as the notice clearly informed petitioners that they were being denied further temporary housing assistance because they failed to comply with the October ILP, failed to cooperate with the EOC and failed to attend the October 13, 1999 case management meeting. In our view, such notice was timely and adequately detailed the

---

**2.** Notably, petitioners' copy of the notice reflects the date of the referenced ILP as "10/8/99" while the DSS copy states the correct date of the most recent ILP, namely "10/6/99."

reasons for the proposed termination, as well as setting forth petitioners' options and rights, thus affording petitioners an opportunity to defend against the charges (*see, Matter of Block v Ambach, supra,* at 332-333; *Matter of Chase v Binghamton Hous. Auth.,* 91 AD2d 1147, 1147-1148; *cf., Matter of Colon v Blum,* 81 AD2d 637, 638; *Matter of Ector v Blum,* 80 AD2d 931, 931-932). Moreover, petitioners have failed to demonstrate any prejudice as a result of any inadequacies in the notice (*see, Matter of Garofalo v Dowling, supra,* at 772; *Matter of Mecca v Dowling,* 210 AD2d 821, 824, *lv denied* 85 NY2d 809). Petitioners put forth—with the assistance of counsel—an extensive defense to the charges, and at no point in the record did they claim, nor do they argue now, that they were unfairly surprised by the charges addressed at the fair hearing (*see, Matter of George v New York State & Local Retirement Sys.,* 285 AD2d 798, 799-800; *Matter of Tyler v New York State Commr. of Motor Vehs.,* 284 AD2d 645, 646).

We next reject petitioners' assertions that the challenged determinations are not supported by substantial evidence. "Substantial evidence will be found to exist if, upon a review of the record as a whole, [this Court] determine[s] that there is a rational basis therein for the findings of fact supporting the agency's determination * * *" (*Matter of Kessman v Ulster County Dept. of Social Servs.,* 258 AD2d 867, 868 [citation omitted]). This Court "is precluded from weighing the evidence or substituting its own view of the evidence, as that would usurp respondents' function as the fact finder" (*id.,* at 868).

As to determination No. 1, eligibility requirements for temporary housing assistance are established by 18 NYCRR 352.35 which mandates, inter alia, that applicants for such assistance cooperate with the local agencies' assessment of their needs and with the development of an ILP, and that the unreasonable failure on two or more occasions to comply with the ILP requirements must result in the discontinuance of temporary housing (*see,* 18 NYCRR 352.35 [c] [2]), a sanction which is to be invoked only when a recipient makes no attempt to comply with the requirements of an ILP, and not for an inability to comply (*see, Matter of McCain v Giuliani,* 252 AD2d 461, 462, *lv dismissed* 93 NY2d 848). At the hearing, petitioners' DSS caseworker testified that they never presented him with any evidence demonstrating that they had been actively searching for housing during the summer or fall of 1999. Moreover, a letter from the EOC which was received in evidence indicates that Richard Mangini failed to arrive on time for his scheduled meeting with an EOC caseworker for assistance in

seeking permanent housing and that upon his late arrival—by one hour and 40 minutes—he was verbally abusive, belligerent and hostile. This supports the determination that petitioners failed to cooperate with the EOC, as was required in the October ILP. Additionally, Janice Mangini admitted that she did not attend the October 13, 1999 case management meeting scheduled for 9:00 A.M. and that Richard Mangini did not leave home for the meeting until after 9:10 A.M.

While petitioners offered a version of the events contradicting that of the DSS caseworker and offered what petitioners' term "reasonable excuses" for any alleged failure to comply with the October ILP, these assertions raised issues of credibility for the ALJ to resolve (*see, Matter of Hibbard [Sweeney]*, 227 AD2d 698). Likewise, the ALJ reasonably rejected petitioners' arguments that their failure to comply with the October ILP was excused in light of Richard Mangini's learning disability. No correlation was made between Richard Mangini's reading limitations and the chronic failure by both petitioners to attend meetings and otherwise cooperate in the agencies' efforts to assist them in finding permanent housing. Once again, the argument distilled to issues of credibility, which were resolved by the ALJ in favor of the DSS witnesses. Although housing assistance cannot be denied or discontinued where a failure to comply is due to physical or mental impairment (*see*, 18 NYCRR 352.35 [c]), evidence was adduced at the fair hearing that, in the past, Richard Mangini had demonstrated the ability to search for, secure and hold down employment as a condition for receiving public assistance. This evidence supports the conclusion that the tasks he was expected to perform by DSS were not unreasonable, even assuming that his reading ability was limited. Moreover, there is no evidence that Janice Mangini was incapable of accomplishing each of the requirements set forth in the ILPs. Accordingly, the record as a whole demonstrates that determination No. 1, finding that petitioners unreasonably failed to comply with the terms of the September and October ILPs, is supported by substantial evidence.

Next, as to Richard Mangini's substantial evidence challenge to the determination in proceeding No. 2, an applicant for public assistance may be required to participate in a job search program (*see*, Social Services Law § 336 [1] [m]) and, upon request, must demonstrate that he or she is engaged in an active and continuing job search (*see*, Social Services Law § 336-d). An individual who without good cause fails to comply with such requirements is subject to sanctions, including the

denial or discontinuance of public assistance (*see*, Social Services Law §§ 341, 342; 12 NYCRR 1300.12 [c] [1]).

At the hearing, a DSS welfare examiner testified that in September 1999, Richard Mangini—as an employable public assistance recipient—signed an employment program agreement indicating that he understood that he was required to submit evidence of 10 job contacts within one week and to comply with other employment search requirements. The agreement clearly states that his failure to comply could lead to a reduction or discontinuance of his public assistance. According to the examiner, Richard Mangini completed a job search booklet wherein he reported that he had contacted 10 prospective employers, but that when five of the 10 listed employers were contacted by DSS, each indicated that no application had been submitted. Richard Mangini did not dispute that he failed to perform the necessary number of employment contacts and he admitted to completing the booklet falsely. It was Richard Mangini's contention at the hearing that he was limited in his efforts to comply due to his learning disability of which DSS was aware. In response to this contention, the welfare examiner testified that she had known Richard Mangini for five years and that he had, in the past, completed job searches as required and, in fact, had secured employment as a result of these contacts. She knew his wife helped him fill out job applications and complete other paperwork, but that at no time did Richard Mangini tell her that he could not do a job search. As was the case in determination No. 1, the asserted "reasonable excuse" or "good cause" (*see*, 12 NYCRR 1300.12 [c] [1]) for Richard Mangini's failure to comply with the public assistance requirements presented credibility issues to be resolved by the ALJ (*see*, *Matter of Hibbard [Sweeney]*, 227 AD2d 698, *supra*). A review of the record amply demonstrates that determination No. 2 is based on substantial evidence.

The remaining claims before us—as limited by petitioners' brief—are rejected. Petitioners allege that determination No. 1 was arbitrary and capricious and rendered in violation of lawful procedure inasmuch as DSS failed to (1) inform petitioners of their right to continuing aid pending a hearing, (2) take adequate steps and offer sufficient preventive services to ensure the preservation of petitioners' family, (3) provide petitioners with a restaurant allowance during their stay in emergency housing,[3] and (4) provide petitioners with adequate emergency housing. Although we are troubled by DSS's admitted failure

---

3. Petitioners also make an ancillary claim for monetary relief in connection with this argument.

to provide continuing aid until ordered to do so at the first fair hearing, these claims—even if proven—do not provide any ground for overturning determination No. 1.

Likewise, Richard Mangini's claim that determination No. 2 should be annulled in light of DSS's failure to inform him of his right to apply for work-exempt status based on an alleged physical or mental disability is without merit (*see,* Social Services Law § 332-b; 12 NYCRR 1300.2 [d]). Regardless of whether DSS had an obligation to so inform Richard Mangini, this argument also must be rejected in light of his opportunity at the fair hearing to argue and present evidence on this issue and his failure to demonstrate that his limited reading ability rendered him incapable of meeting the job search requirements.

Next, we decline to render the various declarations urged by petitioners. The sought after declarations do not involve challenges to the constitutionality of any statute or regulation but, instead, are essentially generalized restatements of the specific arguments made—and rejected—in the context of the CPLR article 78 proceedings. Indeed, "the 'essence' of petitioners' challenge is directed at the specific acts of the administrative agenc[y] involved and, as such, these causes of action are properly reviewable in the context of a CPLR article 78 proceeding" (*Matter of Aubin v State of New York,* 282 AD2d 919, 922, *lv denied* 97 NY2d 606; *see, Matter of Roebling Liqs. v Urbach,* 245 AD2d 829, 830, *appeal dismissed, lv denied* 91 NY2d 948; *Dimiero v Livingston-Steuben-Wyoming County Bd. of Coop. Educ. Servs.,* 199 AD2d 875, 877, *lv denied* 83 NY2d 756).

Finally, the specific acts or omissions of DSS—other than those addressed above—of which petitioners now complain, occurred more than four months before the commencement of each of these proceedings (*see,* CPLR 217 [1]). Accordingly, these remaining claims, to the extent that they may be reviewable here, are also rejected as untimely.

Crew III, J.P., Peters, Mugglin and Lahtinen, JJ., concur. Adjudged that the determinations are confirmed, without costs, and petitions dismissed.