■ In the Matter of HUNTINGTON AND KILDARE, INC., et al., Petitioners, v ALEXANDER B. GRANNIS, as Commissioner of Environmental Conservation, Respondent. [932 NYS2d 558]—

Malone Jr., J.

Petitioner Metz Family Enterprises, LLC (hereinafter MFE) is the successor in interest of petitioner Huntington & Kildare, Inc. (hereinafter H&K) to a parcel of property located in the Town of Germantown, Columbia County that contains underground storage tanks that were used for the storage of petroleum products. In 2005, the Department of Environmental Conservation (hereinafter DEC) commenced an administrative enforcement proceeding against petitioners, charging them with, among other things, discharging petroleum at the site (*see* Navigation Law § 173), failing to immediately contain a discharge of petroleum (*see* Navigation Law § 176) and discharging

petroleum into the waters of the state in contravention of water quality standards (see ECL 17-0501; 6 NYCRR 703.5). Petitioners answered and moved to file a third-party complaint seeking indemnification and contribution from Stewart's Ice Cream Company, Inc., a former tenant on the property.[1] Following the denial of this motion, a hearing was held and, at the conclusion of the hearing, the Administrative Law Judge issued a hearing report finding that petitioners were guilty of the violations alleged in the complaint. Respondent adopted the ALJ's report and ordered, among other things, each petitioner to pay a civil penalty in the amount of $15,000 and to submit a work plan to close the underground storage tanks and remediate the site. Petitioners thereafter commenced this proceeding challenging that determination.

Petitioners disclaim liability for the petroleum contamination found on their property by contending that they cannot be liable as dischargers because they do not own the underground storage tanks located thereon. This argument is misplaced, however, because respondent's finding of liability was premised on petitioners' control over the property on which the discharge occurred and their failure to remediate the contamination, rather than their ownership of the storage tank system. Indeed, "strict liability under the [Navigation Law] need not be premised on ownership of land or a petroleum system at the time a discharge occurs; instead, such liability may be founded either upon a potentially responsible party's capacity to prevent spills before they occur or the ability to clean up contamination thereafter" (State of New York v C.J. Burth Servs., Inc., 79 AD3d 1298, 1301 [2010] [emphasis omitted], lv dismissed 16 NY3d 796 [2011]; see State of New York v Speonk Fuel, Inc., 3 NY3d 720, 724 [2004]; State of New York v Green, 96 NY2d 403, 406-408 [2001]). Ownership of the storage system is likewise not a prerequisite for liability for the discharge under the Environmental Conservation Law (see ECL 17-0501 [1]; 17-0301; 6 NYCRR 703.5).

The record here reflects that both H&K and MFE had control over the activities conducted on the property when each owned it, and that each had reason to know that petroleum products had been, and were being, used on the property (see State of New York v Green, 96 NY2d at 406-408). Notably, it is undisputed that the property has been used as a gas station for approximately 70 years and had an active on-site gas station at the time of each petitioner's purchase. In addition, petitioners were aware that a discharge had occurred and each had the

---

1. Stewart's Ice Cream leased the premises from Peterson Petroleum, Inc.

ability to clean up the contamination but did not do so (see State of New York v C.J. Burth Servs., Inc., 79 AD3d at 1301; State of New York v LVF Realty Co., Inc., 59 AD3d 519, 522 [2009], lv denied 12 NY3d 871 [2009]).

The record shows that, in April 1998, H&K, the then-owner of the property, was notified by DEC that the property contained a petroleum contaminant plume consistent with gasoline. Three years later, following further investigation, DEC notified H&K that the three underground storage tanks had not been properly closed in place (see 6 NYCRR 613.9) and directed H&K to either remove the tanks or properly close them in place, and to conduct quarterly sampling of on-site monitoring wells located in the vicinity of the tanks. Although H&K hired a consultant to monitor groundwater samples taken from the property, which samples consistently showed petroleum contamination in the vicinity of the tanks, H&K did not remediate the site or take action to properly close the tanks. When H&K sold the property to MFE in February 2004, James Metz, who had been directly involved in the investigation and treatment of the underground tanks for nearly 20 years,[2] continued working as a consultant on the issue for MFE. Thus, it cannot be said that MFE was unaware of the underground storage tanks or of the need to remediate the ongoing discharge, yet it took no action to do so. Based on the foregoing, respondent's determination that petitioners are responsible as dischargers is supported by substantial evidence (see CPLR 7803 [4]; Matter of Riverkeeper, Inc. v Johnson, 52 AD3d 1072, 1075 [2008], lv denied 11 NY3d 716 [2009]).

To the extent not specifically addressed, petitioners' remaining contentions have been considered and found to be without merit.

Rose, J.P., Kavanagh and McCarthy, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

---

**2.** Metz had purchased Peterson Petroleum's stock in 1986 and had been hired by H&K as a consultant in 1988.