In the Matter of CARNEY'S RESTAURANT, INC., et al., Petitioners, v STATE OF NEW YORK et al., Respondents. [933 NYS2d 120]—

Malone Jr., J.

Petitioner Robert Carney is the sole shareholder, officer and director of petitioner Carney's Restaurant, Inc. (hereinafter the restaurant), which is located in a historic building in Saratoga County. Petitioners applied for a State Pollutant Discharge Elimination System (hereinafter SPDES) permit to install a septic system for the restaurant that would discharge effluent into the surface water of a tributary of Ballston Lake. The

permit issued to petitioners by respondent Department of Environmental Conservation (hereinafter DEC) in 1993 contained, among other things, effluent limitations and monitoring requirements. In 1997, DEC received a complaint about petitioners' discharge and, following an investigation, DEC informed petitioners that the disposal system was exceeding the effluent limitations and that petitioners were not meeting the monitoring requirements. In 1998, 2001 and 2003, petitioners and DEC executed orders on consent, wherein Carney, on behalf of the restaurant, admitted to various violations of the Environmental Conservation Law and agreed to civil penalties, and DEC set forth requirements for remedial measures and compliance activities. With each order, while legally allowed but clearly not required, nearly all of the civil penalties were suspended, on the condition that petitioners take the agreed-upon specified corrective action within an agreed-upon time period.

The parties thereafter entered into a final consent order in 2005, which required petitioners to submit an approvable plan to replace the sewage disposal system before a date certain and provided that, if they failed to do so, DEC would require them to install a new system to transport wastewater to a treatment plant and plug the septic tank outlet, all within agreed-upon specified time periods. After petitioners failed to submit the plan, install a new sewage disposal system and plug the septic tank within those specified time periods, DEC notified them that the SPDES permit would be revoked, effective September 13, 2006, and that they would be thereafter prohibited from discharging wastewater into the tributary. Petitioners continued to discharge wastewater into the tributary until December 2006.

In 2008, DEC served petitioners with a notice of hearing and complaint, setting forth the full history of petitioners' numerous violations of the Environmental Conservation Law and regulations. Petitioners filed an answer asserting some purported defenses. Following a hearing, an Administrative Law Judge (hereinafter ALJ) issued a report finding, among other things, that petitioners had failed to comply with various orders on consent, violated the restrictions contained in the SPDES permit and also discharged wastewater into the tributary without a permit after September 2006.

Respondent Commissioner of Environmental Conservation (hereinafter respondent) thereafter adopted the ALJ's hearing report and assessed a $400,000 joint and several civil penalty against petitioners. Respondent suspended $254,500 of the penalty on the condition that petitioners submit to DEC an ap-

provable plan for the disposal of their wastewater within 30 days. Respondent also reinstated $54,500 in previously suspended penalties against the restaurant. Petitioners then commenced this CPLR article 78 proceeding challenging that determination. Respondents answered and asserted five counterclaims, seeking, among other things, enforcement of the determination. Supreme Court severed and stayed two of respondents' counterclaims and transferred the remainder of the proceeding to this Court.

Initially, petitioners challenge respondent's findings that they violated the Environmental Conservation Law and implementing regulations, as well as the SPDES permit. Respondent's findings in this regard are entitled to deference and will be upheld so long as they are supported by substantial evidence in the record (*see Matter of DeCillis v Grannis*, 69 AD3d 851, 851 [2010], *lv denied* 14 NY3d 709 [2010]; *Matter of Riverkeeper, Inc. v Johnson*, 52 AD3d 1072, 1074 [2008], *lv denied* 11 NY3d 716 [2009]). Testimony by DEC staff who inspected the restaurant's sewage disposal system provides substantial evidence to support respondent's finding that petitioners violated the Environmental Conservation Law by discharging sewage, as well as kitchen wastewater, oil and grease, from the septic tank into a tributary of Ballston Lake. This finding is also supported by petitioners' own admissions in the consent orders that such discharge had occurred. In these orders, petitioners also admitted, among other things, that they had failed to maintain their wastewater discharge system (*see* ECL 17-0501, 17-0511; 6 NYCRR 703.2, former 754.4 [c], [k]; former 756.3 [b]), and had failed to report a noncompliance event (*see* ECL 17-0511, 17-0815 [3]; 6 NYCRR former 754.4 [b]). DEC also offered proof that petitioners were required to submit annual summary reports for the SPDES permit (*see* 6 NYCRR 750-2.5 [a] [1]), but that they filed only one out of the nine that were required.

Substantial evidence also supports respondent's finding that petitioners violated ECL 17-0701 and 6 NYCRR 750-2.8 by connecting two residential apartments to the restaurant's discharge system without authorization. Petitioners' application for the SPDES permit indicated that the permit would be for a "60-seat restaurant" and did not mention a hookup to the system from any other building. The permit was thereafter issued by DEC for a restaurant as described in petitioners' application. Although petitioners contend that DEC was aware of the connection of the apartment building because, in 1993, their engineer sent DEC a letter in which he stated that the system had been installed "in substantial accordance with the [DEC]-

approved plans," this letter was not sent to DEC until after the permit had been issued. Nor does it change the fact that the additional residential connections were not disclosed on the permit application or authorized by the SPDES permit that was issued to them by DEC.

Next, petitioners challenge the finding that they violated the 2005 consent order by failing to submit an approvable plan for the replacement of the sewage disposal system within the time period specified in the consent order. Specifically, they do not dispute that they failed to submit a plan that was approved by DEC but, rather, they allege that their failure to do so was DEC's fault. This contention is not supported by the record, and the affidavit of engineer Thomas Andress, on which petitioners primarily rely as support for this claim, is not part of the administrative record because it was obtained by petitioners subsequent to the hearing (see Matter of Levine v New York State Liq. Auth., 23 NY2d 863, 864 [1969]; Matter of City of Saratoga Springs v Zoning Bd. of Appeals of Town of Wilton, 279 AD2d 756, 760 [2001]). In any event, there is substantial evidence in the record that petitioners did not comply with all of the terms and conditions set forth in the consent order, including respondent's finding that petitioners discharged wastewater into the tributary without a permit in violation of ECL 17-0505. The record reflects that, in August 2006, DEC informed petitioners that the permit would be revoked effective September 13, 2006. A DEC employee inspected the site on September 14 and December 7, 2006. The employee testified at the hearing that, both times, he observed that petitioners were continuing to discharge wastewater into the tributary. The record also reflects that petitioners did not inform DEC that they had plugged the septic tank until December 14, 2006. Based on all of the foregoing, respondent's determination to enforce the previously-suspended civil penalties associated with the 2005 consent order is supported by substantial evidence.

Petitioners also challenge respondent's determination finding Carney personally liable for certain violations. However, the record reflects that, as sole officer and shareholder of the restaurant, Carney was the sole individual personally and directly responsible for making decisions regarding the restaurant's sewage disposal system, was the named permittee for the SPDES permit and was the individual responsible for filing discharge monitoring reports. The record further shows that Carney knew about the septic system failures and did not comply with repeated requests by DEC to replace it. He also knew about the effluent limits and the repeated violations of

those limits and similarly did not take action to remedy them. Finally, Carney admitted that he repeatedly failed to comply with the consent orders and offered no plausible excuse for his failures. As such, substantial evidence supports respondent's determination that Carney is personally liable for the SPDES permit violations, the illegal discharge of wastewater after the permit was revoked and the failure to take any corrective action as set forth in the consent orders (*see Lake George Park Commn. v Salvador*, 72 AD3d 1245, 1247 [2010], *lv denied* 15 NY3d 712 [2010]; *Matter of Jackson's Marina v Jorling*, 193 AD2d 863, 866 [1993]).

To the extent that they are properly preserved, we are not persuaded by petitioners' remaining contentions, including their claim that their due process rights were violated. Notably, to the extent that the ALJ conformed the pleadings to the proof at the hearing, because DEC did not seek enforcement of the affected claims in their counterclaims, petitioners are not aggrieved by any alleged deficiencies in the complaint. In any event, the complaint "need only be reasonably specific" and the record reflects that, read as a whole, the complaint adequately apprised petitioners of the charges against them and allowed them the opportunity to prepare a defense (*Matter of Block v Ambach*, 73 NY2d 323, 333 [1989]; *see Matter of Mangini v Christopher*, 290 AD2d 740, 743 [2002]). Notably, petitioners did not object to either the adequacy of the complaint or to DEC's introduction of evidence both at the hearing and upon their administrative appeal. Petitioners also contend that they were deprived of an opportunity to present certain defenses. However, the record shows that the ALJ permitted petitioners an opportunity to present additional defenses in their own post-hearing brief, as well as in their reply brief to DEC's post-hearing brief, and were also given the opportunity by the ALJ to submit additional evidence, but then failed to do so. As such, it cannot be said that petitioners' due process rights were violated as a result of the alleged deficiencies (*see Matter of Ostad v New York State Dept. of Health*, 40 AD3d 1251, 1251-1252 [2007]; *Matter of Mangini v Christopher*, 290 AD2d at 744).

Finally, we do not find the penalty imposed to be unjust or inappropriate such that it constitutes an abuse of discretion as a matter of law (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 232-234 [1974]). The record contains substantial evidence of petitioners' repeated and clearly longstanding violations of the Environmental Conservation Law

and associated regulations over the course of more than 10 years. The record also reveals that petitioners were offered many opportunities to remedy those violations but failed to do so. Considering that the Environmental Conservation Law permits civil penalties of up to $37,500 per day (*see* ECL 71-1929) and the penalties imposed herein were well under that limit, given the circumstances presented here, it simply cannot be said that the penalty imposed is an abuse of discretion.

Mercure, J.P., Kavanagh, McCarthy and Egan Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.