*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 1, 2016　　　　　522518
_____

In the Matter of SUPREME
　　ENERGY, LLC, et al.,
　　　　　　　　　Petitioners,

　　　　v　　　　　　　　　　　　MEMORANDUM AND JUDGMENT

JOSEPH J. MARTENS, as
　　Commissioner of Environmental
　　Conservation, et al.,
　　　　　　　　　Respondents.
_____

Calendar Date:  October 18, 2016

Before:  Peters, P.J., Garry, Devine, Clark and Aarons, JJ.

_____

　　　　Cohen & Cohen, Utica (Daniel S. Cohen of counsel), for
petitioners.

　　　　Eric T. Schneiderman, Attorney General, Albany (Meredith G.
Lee-Clark of counsel), for respondents.

_____

Aarons, J.

　　　　Proceeding pursuant to CPLR article 78 (transferred to this
Court by order of the Supreme Court, entered in Albany County) to
review a determination of respondent Commissioner of
Environmental Conservation finding, among other things, that
petitioners failed to obtain a license for an onshore major
petroleum storage facility.

　　　　Alaskan Oil, Inc. operated and owned an onshore major
petroleum storage facility located in the Village of
Baldwinsville, Onondaga County.  In 2003, petitioner Supreme
Energy, LLC, of which petitioner Frederick Karam was the sole

owner and member, entered into a land contract with Alaskan Oil to purchase the facility.  While Supreme Energy did not officially take title until 2006, it had assumed operational control over the facility in 2004.  After Supreme Energy failed to comply with deficiencies delineated in separate notices of violations, respondent Department of Environmental Conservation (hereinafter DEC) commenced an enforcement proceeding in 2008 alleging that, as relevant here, petitioners operated a major petroleum storage facility without a license, petitioners failed to pay required licensing fees and submit monthly certifications and petitioners failed to maintain an adequate secondary containment area for the storage tanks.  After a hearing, the Administrative Law Judge (hereinafter ALJ) issued a report in which he recommended, among other things, that petitioners be held liable on these charges and that Karam bear personal liability for the charges relating only to operating a facility without a license and failing to maintain an adequate secondary containment area.  Respondent Commissioner of Environmental Conservation (hereinafter respondent) largely adopted the ALJ's recommendation and fined petitioners $234,900 for operating a facility without a license, $564,817 for failing to pay the required licensing fees, and $469,800 for failing to maintain adequate secondary containment – for a total of $1,269,517. Respondent, however, imposed personal liability upon Karam for all of the charges.  Petitioners commenced this CPLR article 78 proceeding seeking annulment of respondent's determination. Supreme Court thereafter transferred the matter to this Court. We confirm.

The applicable standard of review is whether substantial evidence supports respondent's determination (see CPLR 7803 [4]; Matter of Al Turi Landfill v New York State Dept. of Envtl. Conservation, 98 NY2d 758, 760 [2002]; Matter of Protect the Adirondacks! Inc. v Adirondack Park Agency, 121 AD3d 63, 69 [2014], lv dismissed and denied 24 NY3d 1065 [2014]).  Under this standard, "it is the responsibility of the administrative agency to weigh the evidence and choose from among competing inferences therefrom and, so long as the inference drawn and the ultimate determination made are supported by substantial evidence, it is not for the court to substitute its judgment for that of the administrative agency" (Matter of Murtaugh v New York State Dept.

of Envtl. Conservation, 42 AD3d 986, 987 [2007] [internal brackets, quotation marks and citation omitted], lv dismissed 9 NY3d 971 [2007]).  Respondent is not bound by the ALJ's factual findings and is entitled to make his own findings (see Matter of Jackson's Marina v Jorling, 193 AD2d 863, 865-866 [1993]).  To that end, respondent's determination will not be disturbed so long as it is supported by substantial evidence (see Matter of Carney's Rest. Inc. v State of New York, 89 AD3d 1250, 1252 [2011]).[1]

We find that respondent's determination that Supreme Energy operated a major petroleum facility without a license was supported by substantial evidence.  Under New York's Navigation Law, a person is prohibited from operating a major petroleum storage facility in the absence of a license (see Navigation Law § 174 [1] [a]; [9]).  By the time Supreme Energy assumed control over the facility in 2004, Alaskan Oil's license, which was non-transferable, had already expired in 2002.  Supreme Energy, in fact, submitted an application for a license in 2004, but DEC deemed that application incomplete and another license application was never submitted.  Furthermore, even if we agreed with petitioners' assertion that Supreme Energy was permitted to operate the facility pursuant to the terms of a 2004 consent order, a notice of violation dated April 27, 2007 from DEC and addressed to Karam explicitly informed him that Supreme Energy's "license information [was] not current and correct" and that this deficiency needed to be rectified.  Supreme Energy nevertheless continued its operation of the facility without a license.  Inasmuch as respondent found that Supreme Energy unlawfully operated the facility without a license from May 2, 2007 to June 2009, which encompassed a period after the April 2007 notice of violation explicitly advised Karam that Supreme Energy did not have a valid license, we find no basis to upset this determination (see Matter of Huntington & Kildare, Inc. v

---

[1] Contrary to respondents' assertion, petitioners did not abandon their argument that the determination was unsupported by substantial evidence inasmuch as petitioners' brief incorporates by reference such argument as set forth in the petition (see Matter of Murphy Heating Serv. v Chu, 124 AD2d 907, 909 [1986]).

<u>Grannis</u>, 89 AD3d 1195, 1197 [2011]).

We also conclude that substantial evidence exists in the record supporting respondent's determination that petitioners failed to pay license fees and submit timely certification reports.  Under the applicable statutory provisions and regulations, Supreme Energy was obligated to submit monthly certification reports (<u>see</u> Navigation Law §§ 172 [10]; 174 [5]; 17 NYCRR 30.6 [c] [2]; 30.8 [a]), and, along with these reports, Supreme Energy was required to submit full payment of any license fees or surcharges (<u>see</u> Navigation Law § 174 [5]; 17 NYCRR 30.9 [b]).  The hearing testimony and documentary evidence reveal that 31 out of the 47 monthly certification reports submitted between August 2004 and June 2008 were deemed untimely because they were not accompanied by the requisite license fee or surcharge payments and, as a consequence, subjected Supreme Energy to additional late fees (<u>see</u> 17 NYCRR 30.9 [e]).  Taking into account Supreme Energy's admission that it did not pay all of the required licensing fees, substantial evidence exists to support respondent's determination on this point (<u>see generally</u> 300 <u>Gramatan Ave. Assoc. v State Div. of Human Rights</u>, 45 NY2d 176, 181 [1978]).

Next, we discern no reason to disturb respondent's finding that Supreme Energy failed to maintain an adequate secondary containment area for the petroleum storage tanks.  The regulatory scheme requires that an aboveground petroleum storage tank with a capacity of 10,000 gallons or more have around it a secondary containment area to protect against petroleum leakage and the release of petroleum (<u>see</u> 6 NYCRR 613-4.1 [b] [1] [v] [a]).[2] Whether a facility maintains an adequate secondary containment area for its tanks can be based on internal DEC guidelines (<u>see</u> 17 NYCRR 30.5 [e]), one of which is that the secondary containment area be at least 110% of the capacity of the largest tank in the facility.  Karam testified that he was aware of this particular 110% capacity requirement.  Yet, DEC's numerous

_____

[2]  6 NYCRR former 613.3 (c) (6) (i), which was repealed in 2015 but governed the time of the events here, similarly imposed a secondary containment system requirement.

investigations of the facility conducted since Supreme Energy assumed operational control in 2004 found that the 110% capacity requirement had not been complied with, and, as of 2008, Supreme Energy still had not satisfied this requirement. The record evidence also supports respondent's determination that the secondary containment area was unsatisfactory due to holes, rips and tears in the urethane liners. While some of this damage was caused by a DEC contractor, DEC advised Karam that Supreme Energy could seek financial reimbursement for any damage caused by the DEC contractor and, to the extent that Karam denies being told this information, it presented a credibility issue for respondent's resolution (see Matter of ELG Utica Alloys, Inc. v Department of Envtl. Conservation, 116 AD3d 1200, 1205 [2014], appeal dismissed 24 NY3d 929 [2014]). Furthermore, most of the damage in the liner was unrelated or existed prior to the work performed by the DEC contractor at the facility, and none of this damage was addressed by Supreme Energy. We therefore find that respondent's determination that Supreme Energy failed to maintain an adequate secondary containment area for its tanks was supported by substantial evidence.

We also reject petitioners' contention that respondent erred in piercing the corporate veil and imposing personal liability upon Karam. "Generally . . . piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in [the] plaintiff's injury" (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141 [1993]). Whether to pierce the corporate veil involves a scrutiny of various considerations, including "the overlap in ownership, officers, director and personnel, the capitalization of the corporation, any commingling of assets and the presence, or absence, of the formalities that attend the corporate form" (Kain Dev. LLC v Kraus Props., LLC, 130 AD3d 1229, 1235 [2015]; see Austin Powder Co. v McCullough, 216 AD2d 825, 826-827 [1995]). Karam testified at the hearing that not only did he own Supreme Energy, but he was also the sole owner of Cold Springs Terminal, LLC, which operated a petroleum storage facility next to the one operated by Supreme Energy. Notwithstanding the fact that Supreme Energy and Cold Springs

Terminal were separate entities, Karam used a single checkbook for both of them. Moreover, Karam commingled personal and business finances in that he deposited payments that he personally received for child support into the corporate account and monies from that same account would be used for Karam's house payments (see National Union Fire Ins. Co. of Pittsburgh, Pa. v Bodek, 270 AD2d 139, 139 [2000], lv dismissed 95 NY2d 887 [2000]; Austin Power Co. v McCullough, 216 AD2d at 827; compare Heim v Tri-Lakes Ford Mercury, Inc., 25 AD3d 901, 903 [2006], lv dismissed and denied 6 NY3d 886 [2006]). Additionally, while Karam admitted that Supreme Energy lacked funds to pay the previously discussed license fees, Supreme Energy provided Cold Springs Terminal with a monetary loan in 2007 of approximately $74,000. To that end, Karam likewise admitted that Supreme Energy passed the cost of the license fees by billing it to clients, but the monies received from the clients were not used to satisfy payment of the license fees owed to DEC. In view of the foregoing, Karam failed to observe corporate formalities and abused the corporate form to perpetuate a wrongdoing against DEC. As such, we find no error in respondent's determination to pierce the corporate veil and to hold Karam personally responsible for the imposed financial penalties. In light of this determination, it is unnecessary for us to reach whether personal liability attaches under the responsible corporate officer doctrine.

Finally, respondent was authorized to sanction petitioners $25,000 per day (see Navigation Law § 192), which, in this case, could have resulted in a financial penalty in excess of $19 million. Respondent, however, did not use this permissible rate and instead used a fraction of that $25,000 daily rate in calculating the overall fine. Accordingly, taking into account petitioners' wrongdoing and the deference accorded to respondent in determining an appropriate sanction, we conclude that the assessed monetary fine of $1,269,517 does not shock the judicial conscience so as to constitute an abuse of discretion (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 233 [1974]; State of New York v Williamson, 8 AD3d 925, 930 [2004]; Matter of Slemp v New York State Dept. of Envtl. Conservation, 176 AD2d 1122, 1124 [1991]).

Petitioners' remaining contention, to the extent not specifically addressed, has been examined and is found to be without merit.

Peters, P.J., Garry, Devine and Clark, JJ., concur.

ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

ENTER:

Robert D. Mayberger
Clerk of the Court