Matter of West v Alexander (2025 NY Slip Op 05858)

Matter of West v Alexander

2025 NY Slip Op 05858

Decided on October 23, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 23, 2025

CV-24-1242

[*1]In the Matter of George F. West, Petitioner,

v

Chris Alexander, as Acting Executive Director of Cannabis Management, Respondent.

Calendar Date:September 5, 2025

Before:Pritzker, J.P., Reynolds Fitzgerald, Lynch, Fisher and Mackey, JJ.

James L. Riotto II, Rochester, for petitioner.

Letitia James, Attorney General, Albany (Alexandria Twinem of counsel), for respondent.

Lynch, J.

Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Office of Cannabis Management finding petitioner in violation of certain provisions of the Cannabis Law, and imposing penalties.

This CPLR article 78 proceeding challenges a determination of the Office of Cannabis Management (hereinafter OCM) fining petitioner $35,000 for violations of the Marihuana Regulation and Taxation Act. By way of background, petitioner is the owner of a store in the City of Canandaigua, Ontario County. In September 2022, an OCM investigator visited the store and observed cannabis products being offered for sale without a license (see Cannabis Law § 125 [1]).[FN1] OCM served a cease-and-desist order upon petitioner informing him that the unlicensed sale of cannabis products was illegal and directing him to discontinue such activities (see Cannabis Law § 138-a [1]).

In June 2023, OCM investigators conducted a regulatory inspection of petitioner's store (see Cannabis Law § 11 [3]), during which they again observed cannabis and hemp products being offered for sale without a license.[FN2] OCM seized over 200 pounds of cannabis and hemp products during the inspection, issued a notice of violation (hereinafter NOV) and order to cease unlicensed activity, and affixed a copy of the NOV, along with two warning stickers informing the public about the unauthorized sales, to petitioner's storefront window. A few weeks later, in July 2023, an undercover police officer purchased five packages of cannabis from the store, which still did not have a valid license authorizing the sale of such product.

Around the same time, petitioner's attorney emailed OCM representatives advising that an intoxicated person had removed the NOV that was affixed to petitioner's storefront following the June 2023 inspection. OCM provided counsel with another copy of the June 2023 NOV with instructions on where to post it. That same day, petitioner posted a picture on his Facebook page that depicted the window of his store with over 20 copies of the NOV and warning stickers affixed to the glass in a manner that fully obscured the window. Some of the NOVs and warning stickers were positioned upside-down and sideways. The post was accompanied by the following statement: "*edit, they want them up but they don't want me to show off with it. I was asked to take it down[.] Creativity and art at its finest. I decided to have fun with the front windows! Make this window pop! Can you find me in the pictures."

An administrative hearing was held in September 2023, which encompassed testimony regarding the June and July 2023 sales, as well as evidence regarding petitioner's alleged failure to properly display the NOV and warning stickers issued in connection with the June sale. Following the hearing, an Administrative Law Judge (hereinafter ALJ) found that petitioner engaged in the unlicensed sale of cannabis and cannabis products [*2]relative to the June and July 2023 sales and failed to properly display the NOV and warning stickers in accordance with pertinent regulations. Petitioner was fined a total of $35,000 for the violations, and commenced this CPLR article 78 proceeding in Supreme Court challenging the determination. The petition, which raised a question of substantial evidence, was transferred to this Court pursuant to CPLR 7804 (g).[FN3]

Turning first to petitioner's procedural arguments, he contends that the ALJ's findings relative to the July 2023 sale and the failure to properly display warning stickers must be annulled because he was never served with an NOV charging him with these alleged violations of the Cannabis Law. OCM concedes this point, acknowledging that "petitioner's $5,000 penalty for failure to properly display . . . warning stickers and $20,000 fine for selling cannabis on July 13, 2023, were improper" due to the failure to serve him with an NOV. Accordingly, we will annul the ALJ's determinations relative to these alleged violations and vacate the penalties. We decline respondent's invitation to remit the matter back to OCM for further proceedings, as such proceedings are improper in the absence of a timely notice of charges (see generally Matter of Jacoby v New York State Bd. for Professional Med. Conduct,295 AD2d 655, 657 [3d Dept 2002]). In light of our determination, petitioner's contention that his due process rights were violated when the ALJ denied his request to limit the scope of the hearing to the date and subject matter noticed is academic. Moreover, petitioner's assertion in his brief that he was never noticed for the alleged hemp violations is of no moment, as the ALJ's violation finding with respect to the June 2023 sale pertained solely to his unlicensed sale of cannabis.

Otherwise, we discern no basis to disturb the remainder of the ALJ's determination. Contrary to petitioner's assertion, OCM did not conduct a constitutionally impermissible search when it engaged in a warrantless regulatory inspection of his business in June 2023. Initially, "[t]he [Fourth] Amendment is not implicated by entry onto the public portion of a commercial establishment that is held open by the owner to the general public and entered during normal business hours" (Matter of Lowe's Home Ctrs., Inc. v Board of Assessment Review and/or Dept. of Assessment Review of Tompkins County, 106 AD3d 1306, 1308-1309 [3d Dept 2013]; see Matter of Salob v Ambach, 73 AD2d 756, 757 [3d Dept 1979], lv denied 49 NY2d 703 [1980], appeal dismissed 49 NY2d 800 [1980], cert denied 449 US 829 [1980]; see also See v City of Seattle, 387 US 541, 545 [1967]). That is because "there can be no reasonable expectation of privacy in public areas of a commercial establishment[,] for what is observable by the public is observable, without a warrant, by the Government inspector as well[,] and an inspector, like a customer, needs no judicial process to enter" (Matter of Glenwood TV v Ratner, [*3]103 AD2d 322, 328 [2d Dept 1984] [internal quotation marks, brackets and citations omitted], affd 65 NY2d 642 [1985] [affirming "for the reasons stated in so much of the (majority) opinion . . . at the Appellate Division as deal(t) with the constitutional issue"], appeal dismissed & cert denied 474 US 916 [1985]).[FN4] Nor does the Fourth Amendment preclude the seizure of evidence in plain view of enforcement officials lawfully within the premises (see Horton v California, 496 US 128, 133 [1990]).

Further, Cannabis Law § 11 (3) authorizes OCM "[t]o conduct regulatory inspections of any place of business . . . where cannabis, cannabis product, cannabinoid hemp, hemp extract products, or any products marketed or labeled as such, are cultivated, processed, manufactured, distributed, stored, or sold, irrespective of whether a registration, license, or permit has been issued under this chapter" (see also Cannabis Law §§ 11 [5]; 79 [pertaining to inspections of licensed cannabis dispensaries]). An inspection conducted pursuant to that authority extends only to the "place of business" and "shall not include a residence or other real property not otherwise held out as open to the public or otherwise being utilized in a business or commercial manner or any private vehicle on or about the same such property, unless probable cause exists to believe that such residence, real property, or vehicle are being used in such business or commercial manner for" the cultivation, processing, manufacturing or sale of cannabis or hemp products (Cannabis Law § 11 [3]).

The hearing evidence established that, on June 28, 2023, during regular business hours, OCM representatives, employees of the Department of Taxation and Finance and two police officers arrived at petitioner's store to conduct a regulatory inspection.[FN5] The officials were "given permission to come in" by petitioner's employees and, as depicted in the photographs of the inspection, they observed a substantial quantity of packaged products marked as "THC" and "CBD," as well as smoking pipes, an ATM and a cash register. These items were in plain view in public areas of the store. The inspectors took pictures of the products offered for sale, but did not touch or seize anything until petitioner arrived approximately five minutes later. At no point were the inspectors asked to leave the premises. Under these circumstances, we conclude that the warrantless entry into the public portion of petitioner's store and the seizure of evidence in plain view therefrom was both statutorily and constitutionally authorized (see Matter of Lowe's Home Ctrs., Inc. v Board of Assessment Review and/or Dept. of Assessment Review of Tompkins County, 106 AD3d at 1308-1309; Matter of Salob v Ambach, 73 AD2d at 757).

As for testimony revealing that the inspection extended into nonpublic spaces within the store, the inspectors were authorized under Cannabis Law § 11 (3) to inspect those areas insofar as they had probable cause to believe [*4]that cannabis to be offered for sale would be found in these locations (see People v Rizzo, 40 NY2d 425, 429 [1976] [explaining that agents would be authorized to "insist( ), in a nonforcible manner,

on entry into a locked storeroom" during an administrative search of a retail cigarette outlet (internal citation omitted)]).[FN6] Indeed, inspection of a back room revealed excess product and equipment used to package cannabis and "create pre-rolls." The inspectors also found a bin of cannabis flower in a closet. Moreover, an OCM investigator testified that the back room, which was located behind the counter of the store, could be seen while "standing outside" in the lobby. Thus, to the extent that the products were visible in plain view behind the counter, there would be no constitutional prohibition on entering that area (see Horton v California, 496 US at 133).Accordingly, all of the evidence seized during the June 2023 inspection was properly admitted into evidence.

Petitioner further argues that his right to due process was impaired by certain discovery violations. Prior to the administrative hearing, petitioner served upon OCM a discovery demand requesting, among other things, any Rosario, Brady and Giglio material in its possession. OCM provided petitioner with certain material prior to the hearing, including photographs and documentation that it intended to enter into evidence, but did not provide any Rosario, Brady or Giglio material, as requested. At the beginning of the administrative hearing, petitioner's counsel reminded the ALJ that he had served a discovery demand on OCM and advised that he was "aware of at least one witness that does have . . . Giglio material [that] would be relevant to cross-examination." The ALJ did not order the production of this alleged material. We discern no reversible error in this regard. Initially, this contention has been rendered academic by our vacatur of the July 2023 penalties; the Giglio material at issue pertained to the undercover officer who bought cannabis products from petitioner on that date. In any event, a respondent in a proceeding to enforce the Cannabis Law does not have an automatic right to discovery (see 9 NYCRR 133.15 [a]; see generally Cannabis Law § 17). A party to a license revocation hearing must provide, upon request, "the evidence that the party intends to introduce at the hearing, including documentary evidence and the identification of witnesses" (9 NYCRR 133.15 [b]), but this does not extend to exculpatory or impeachment material and, in any event, this was not a license revocation proceeding.[FN7] Additionally, petitioner has not "set forth a factual demonstration" supporting his allegation that the ALJ was biased against him or "prove[n] that the administrative outcome flowed from" such alleged bias (Matter of Sherwood v New York State Dept. of Motor Vehs., 153 AD3d 1022, 1025 [3d Dept 2017] [internal quotation marks and citations omitted]).

Finally, after reviewing the hearing [*5]testimony, the photographs admitted into evidence and the video taken during the June 2023 regulatory inspection, we conclude that the ALJ's determination finding that petitioner engaged in the unlicensed sale of cannabis products on June 28, 2023 in violation of Cannabis Law § 125 (1) is supported by substantial evidence (see Matter of Supreme Energy, LLC v Martens, 145 AD3d 1147, 1148-1149 [3d Dept 2016]). Contrary to petitioner's contention, testing of the product seized from his store during the inspection was not necessary to support the ALJ's determination, as the Cannabis Law not only prohibits the sale of cannabis without a license but also the sale of "any product marketed or labeled as such" (Cannabis Law 138-a [1]). Here, the markings on the packages, which clearly labeled the products being offered for sale as "THC" and included information about the particular strain of cannabinoid present, constituted substantial evidence to support the ALJ's finding that the products being offered for sale were, in fact, cannabis.

Pritzker, J.P., Reynolds Fitzgerald, Fisher and Mackey, JJ., concur.

ADJUDGED that the determination is modified, on the law, without costs, by annulling so much thereof as found that petitioner committed violations of the Cannabis Law in July 2023 and vacating the penalties imposed thereon; and, as so modified, confirmed.

Footnotes

Footnote 1: Petitioner's application for a conditional adult-use dispensary (hereinafter CAUDA) license was pending at that time.

Footnote 2: Petitioner's hemp license expired shortly before the June 2023 inspection and his application for a CAUDA license was still pending at that time.

Footnote 3: In November 2023, after obtaining evidence that petitioner was continuing to sell cannabis without a license, OCM commenced an enforcement action in Supreme Court, Ontario County, seeking a permanent injunction closing petitioner's store under Cannabis Law § 16-a. An injunction closing the store and ordering an accounting of petitioner's assets for the assessment of penalties was issued on June 25, 2024. Petitioner filed a notice of appeal from that determination. Respondent represents — and petitioner does not refute — that the appeal was dismissed due to his failure to timely perfect.

Footnote 4: Accordingly, petitioner's argument that the investigators' entry into the store was illegal because they did not confirm that the business lacked a valid license until they were already inside of the premises is of no moment.

Footnote 5: The testimony established that between 10 and 15 state officials participated in the inspection and that the police officers were present for security reasons.

Footnote 6: Petitioner does not challenge the scope of the search and makes no facial constitutional challenge to the inspection scheme set forth in the Cannabis Law. As such, we have no occasion to opine on the constitutionality of the statutory scheme on this appeal.

Footnote 7: Notably, OCM did provide petitioner with the materials it intended to introduce at the hearing, in spite of the fact that it was not seeking a license revocation.